SIEMENS WESTINGHOUSE POWER CORPORATION, Plaintiff,

v.

DICK CORPORATION, Defendant/Counterclaim Plaintiff,

Continental Casualty Company and National Fire Insurance Company of Hartford, Defendants.

Dick Corporation, On Behalf of the Consortium of Dick Corporation and Siemens Westinghouse Power Corporation, and Individually, Third–Party Plaintiff,

v.

AES Londonderry, L.L.C., Sycamore Ridge, L.L.C., Stone & Webster, Inc., Limbach Company and Sachs Electric Company, Third–Party Defendants.

No. 03 Civ. 364(VM).

United States District Court, S.D. New York.

Oct. 14, 2003.

---

Charles F. Kenny, Gregory N. Chertoff, Peckar & Abramson, P.C., New York City, for plaintiff.

John C. Sabetta, Seyfarth Shaw, New York City, John T. Bergin, Richard M. Preston, Seyfarth Shaw, Washington, DC, for defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Siemens Westinghouse Power Corporation ("SWPC") and defendant Dick Corporation ("Dick") formed a Consortium for the purpose of constructing a power plant in New Hampshire on behalf of global power company AES Corporation ("AES"). Because of delays in the project, SWPC has allegedly paid over $18 million in liquidated damages to AES. SWPC filed a complaint seeking reimbursement for those payments from Dick and from Dick's sureties, defendants Continental Casualty Company and National Fire Insurance Company of Hartford (collectively, the "Sureties"). There are several parties, and numerous motions, still pending in this case. This Decision and Order addresses only SWPC's motion for summary judgment against Dick and the Sureties, which was filed together with SWPC's motion to dismiss Dick's counterclaims. The motion for summary judgment is granted in part and denied in part.

## I. BACKGROUND

In September 2000, Dick and SWPC entered into a Consortium Agreement (the "Consortium") to build a power plant for AES in Londonderry, New Hampshire. (Compl.¶ 12.) The Consortium signed one contract with AES subsidiary AES Londonderry, LLC ("AES Londonderry") and a second contract with AES subsidiary Sycamore Ridge Co., LLC ("Sycamore Ridge") (collectively, the "Owner"). (Compl.¶ 13.) Under those contracts, the Owner assessed liquidated damages against the Consortium in the amount of $85,000 per day beginning June 1, 2002 because the project did not timely achieve what the contract termed "Provisional Acceptance." (Compl.¶¶ 18, 20.) Dick made the initial liquidated damages payments, totaling around $3.6 million. (Affidavit of Howard F. Jenkins in Support of Plaintiff Siemens Westinghouse Power Corporation's Motion for Summary Judgment, dated July 17, 2003 ("Jenkins Aff.") ¶ 5; Statement of Material Facts in Dispute Submitted Pursuant to Local Rule 56.1 in Support of Dick's and Dick's Sureties Opposition to SWPC's Motion for Summary Judgment ("Dick 56.1") ¶ 7.) For reasons that are disputed, in October 2002 the Owner began drawing its liquidated damages from letters of credit SWPC had posted; those draws totaled about $12 million through March 2003. (Jenkins Aff. ¶ 7, Ex. C.) In April 2003, the Owner and the Consortium entered into two Provisional Acceptance Agreements (one with each Owner), which deemed the project as having achieved Provisional Acceptance and which required the Consortium to pay approximately $6 million in additional liquidated damages. (Id. at ¶ 8.) SWPC paid those damages as well, for a total sum in excess of $18 million. (Id. at ¶ 9.)

SWPC argues that, under the Consortium Agreement, Dick is responsible for paying all the liquidated damages in the first instance. (Compl.¶ 30.) The ultimate apportionment of those damages, according to SWPC, is to be determined according to certain procedures set forth in the Consortium Agreement. (See Plaintiff Siemens Westinghouse Power Corporation's Memorandum of Law in Support of Its Motions to Dismiss and for Summary Judgment ("SWPC Mem.") 24.) The Sureties have posted a performance bond on behalf of Dick in connection with the project. (Compl.¶ 36.) SWPC alleges that the bond incorporates the Consortium Agreement by reference; accordingly, SWPC seeks to hold the Sureties jointly and severally liable for the liquidated damages. (Compl.¶¶ 35–39.)

Dick reads the Consortium Agreement to require Dick to pay the liquidated dam-

ages only to the extent of Dick's fault. (*See* Memorandum of Law In Support of Defendant/Counter–Plaintiff, Third–Party Plaintiff Dick Corporation's and Defendants, Continental Casualty Company's and National Fire Insurance Co. of Hartford's Opposition to Siemens Westinghouse Power Corporation's Motion to Dismiss and for Summary Judgment ("Def.Mem.") 5–12). Dick claims there is at least a genuine issue of material fact as to this point. (*Id.*) In any event, Dick claims that SWPC made negligent misrepresentations and fraudulently induced Dick into the Consortium, thereby negating Dick's obligation to pay liquidated damages. (*Id.* at 13–15.) Dick seeks, in the alternative, discovery under Federal Rule of Civil Procedure 56(f). (*Id.* at 18–20.) Finally, the Sureties argue that they are not obligated to pay on their bonds until SWPC performs its duties under the Consortium Agreement. (*Id.* at 20–21.)

## II. *SUMMARY JUDGMENT STANDARD*

The Court may only grant summary judgment "if, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must first look to the substantive law of the action to determine which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the parties dispute material facts, summary judgment will be granted unless the dispute is "genuine," *i.e.*, "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

Summary judgment is appropriate in cases involving an unambiguous contract because the contract's interpretation is a matter of law, not fact. *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1147–48 (2d Cir.1992), *aff'd*, 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993). That one party may offer a different interpretation of the contract's unambiguous language will not defeat summary judgment. *Id.* Moreover, the mere presence of ambiguous contract language is not, by itself, enough to preclude summary judgment: "in order for the parties' intent to become an issue of fact barring summary judgment, there must also exist relevant extrinsic evidence of the parties' actual intent." *Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 116 (2d Cir.1994). In sum, "[w]hen the provisions of the contract are susceptible to conflicting constructions *and* when there is also relevant extrinsic evidence of the parties' actual intent, the meaning of the provisions becomes an issue of fact barring summary judgment." *Williams and Sons Erectors, Inc. v. South Carolina Steel Corp.*, 983 F.2d 1176, 1183–84 (2d Cir.1993) (emphasis in original).

Throughout this inquiry, the Court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of that party. *See Hanson v. McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667 (2d Cir.1996).

## III. *DISCUSSION*

### A. *LIQUIDATED DAMAGES UNDER THE CONSORTIUM AGREEMENT*

The principal dispute between the parties is the meaning of Section 7.6.2 of the

Consortium Agreement, which reads as follows:

> Liquidated damages or other obligations to the Owner arising from delayed completion of the Project, or any part thereof, shall be the responsibility of and shall be paid by Dick as specified in Section 6.3.2 hereof.

(Jenkins Aff. Ex. A, at 17.) Section 6.3.2 of the Consortium Agreement reads:

> Without limiting the generality of Section 6.3.1 above, in the event Siemens Westinghouse is late in performing its obligations under Exhibit G, Siemens Westinghouse will, as its exclusive liability and Dick's sole remedy, be responsible for paying to Dick: the lesser of: (i) the liquidated damages payable in accordance with Article 9, Delay in Delivery, and Article 10, Provisional Acceptance Delay/Bonuses/Final Acceptance, of Exhibit G, *provided however*, in no event shall Siemens Westinghouse's responsibility for payment of such liquidated damages exceed the sum of $85,000 per day, and (ii) the demonstrated impact costs Dick incurs in working around or accelerating its work to overcome the delay caused by Siemens Westinghouse, subject to the exclusions and limits on recovery of such costs in Section 9. In no event will Siemens Westinghouse be liable to Dick for delay claims hereunder if liquidated damages would not have been payable pursuant to Exhibit G. *Dick will be responsible for payment of any scheduled liquidated damages to be paid to Owner.* Dick will also be responsible to pay Siemens Westinghouse the bonus referred to in Article 10, Provisional Acceptance Delay/Bonuses/Final Acceptance, of Exhibit G.

(*Id.* at 13 (first emphasis in original; second emphasis added).) According to SWPC, the meaning and interplay of these provisions is unambiguous: Dick is to pay all the liquidated damages to the Owner in the first instance, and SWPC is to reimburse Dick for SWPC's share, as calculated under Section 6.3.2. SWPC highlights the fact that the contract calls for SWPC to pay liquidated damages to Dick, not the Owner, which is consistent with its reading that Dick is to pay the liquidated damages in the first instance.

SWPC next points out that, according to the contracts with the Owner, liquidated damages are to be paid on a monthly basis. SWPC asserts that it would be impossible to calculate SWPC's share of the damages, according to the formula in Section 6.3.2, on a monthly basis. In particular, Section 6.3.2 caps SWPC's share of the liquidated damages at the "demonstrated impact costs Dick incurs in working around or accelerating its work to overcome the delay caused by Siemens Westinghouse." (Jenkins Aff. Ex A., at 17.) SWPC argues that Dick never made any effort to demonstrate the "impact costs," nor could it have made such a complex analysis on a monthly basis. (*Id.* at ¶ 10.) SWPC asserts that the calculations required under two other provisions referenced in Section 6.3.2 ___ Articles 9 and 10 of Exhibit G, a separate contract incorporated in to the Consortium Agreement ___ are similarly impossible to calculate on a monthly basis. For example, Article 9 of Exhibit G states the SWPC will be liable for liquidated damages only for delay in delivering certain component parts if, after the late component part is delivered and installed, it is determined the SWPC was the "sole cause" of the project's delay. (*Id.* Ex. B, at 22.) Thus, SWPC argues that the general structure of the Consortium Agreement supports its conclusion that Dick is to pay liquidated damages in the first instance.

Dick reads Sections 7.6.2 and 6.3.2 to mean that Dick is only obligated to pay the

Owner *after* it is determined that the damages are properly assessed and SWPC pays its share to Dick. Dick emphasizes that Section 6.3.2 first explains SWPC's obligations to Dick for reimbursement and then later reads, "Dick *will be* responsible for payment of any schedule liquidated damages . . . ." (Jenkins Aff. Ex A., at 13 (emphasis added).) According to Dick, the future tense implies that Dick *will be* responsible for payment *after* SWPC pays its share to Dick. Dick also points to ten separate provisions of the Consortium Agreement which, generally speaking, support the proposition that each member of the Consortium is responsible for its own acts and omissions.[1]

■ The Court agrees with SWPC that the contract unambiguously requires Dick to pay for the liquidated damages in the first instance. Although the contract does not explicitly state that Dick is to pay the damages "in the first instance," or otherwise state that it is to pay those damages "before" apportionment, the Court concludes that the structure and language of the provisions admit of only one reasonable interpretation. First, the payment obligations run from Dick to the Owner, and separately from SWPC to Dick. This structure suggests that SWPC is to *reimburse* Dick for Dick's payments to the Owner. Otherwise, there would be no apparent reason to *twice* specifically indicate that Dick ___ as opposed to the Consortium ___ is responsible for paying the Owner. Second, Dick offers nothing to counter SWPC's observation that the complex apportionment calculations in the Consortium Agreement could not be performed alongside the monthly payment schedule required under the contracts with the Owner. The Court is reluctant to read these three contracts, all of which were signed within two days of each other, as being in tension with one another, especially where the plain language of the provisions supports a more harmonious reading. The ten provisions Dick cites in support of its interpretation are consistent with SWPC's position that the *ultimate* apportionment of the liquidated damages will reflect the relevant acts and omissions of Dick and SWPC.

## B. *AMOUNT OF LIQUIDATED DAMAGES*

■ Dick argues that, even on SWPC's reading of the contract, approximately half of the $18 million SWPC seeks is not liquidated damages at all. First, about $3 million represents money the Owner drew from SWPC's letters of credit for the purpose of removing a subcontractor's lien, and Dick correctly points out that SWPC's complaint concedes as much. (Compl.¶ 24.) Second, Dick states that approximately $6 million of the alleged liquidated damages represent payments as part of a "separate agreement" between SWPC and the Owner, which Dick allegedly protested. (Moatz Aff. ¶ 9.) SWPC responds that both of these payments were made as part of the Provisional Acceptance Agreements, in which both payments are specifically denominated as liquidated damages. The Court concludes that only the $ 6 million payment is properly characterized as liquidated damages.

The factual basis for Dick's assertion that the $6 million payment was a "sepa-

---

1. Dick also argues that Section 7.9.7 of the Consortium Agreement controls, instead of Section 7.6.2. As SWPC's reply memorandum points out, however, Section 7.9.7 is inapposite because it relates to a separate guaranty from Siemens Corporation (SWPC's parent), not the letters of credit from SWPC. (*See* Plaintiff Siemens Westinghouse Power Corporation's Reply Memorandum of Law in Support of its Motion to Dismiss and for Summary Judgment ("SWPC Reply Mem.") 2–3.)

rate agreement" only between SWPC and the Owner is the affidavit Keith A. Moatz, a Dick Vice President. (Moatz Aff. ¶¶ 1, 9.) Notably, Moatz himself appears to have signed both Provisional Acceptance Agreements, which are plainly agreements between the Owner and the Consortium, not just SWPC. (Jenkins Aff. Ex. D.) Moreover, those agreements specify, under the heading *"Liquidated Damages* for Completion of the Project," that the Consortium will pay $6 million in "Provisional Acceptance Late Completion Payments." (*Id.* (emphasis added).) The Court concludes that those payments are properly characterized as liquidated damages, and therefore are to be paid by Dick in the first instance under the Consortium Agreement.

The Court could not identify the $3 million payment in the Provisional Acceptance Agreements, nor any other indication that that draw of money related to liquidated damages. As such, SWPC has not carried its summary judgment burden in this regard and will not be entitled to the initial payment of that sum at this stage in the litigation.

## C. *LIABILITY OF THE SURETIES*

█ The Sureties argue that they cannot be liable on Dick's behalf because the surety bond requires, as a condition precedent to payment, that SWPC fulfill *all* its contractual obligations:

> The Surety shall not be liable to Obligees, or either of them, unless the Obligees, or either of them, have faithfully performed all of the obligations of Siemens Westinghouse Power Corporation as outlined in the Agreement. . . .

(Compl. Ex. M, at 2.) The Sureties state that SWPC has failed to perform its obligation to pay its share of the liquidated damages. Moreover, the Sureties emphasize that SWPC has not sought to dismiss Dick's counterclaims for breach of contract and breach of warranty, indicating that there is potentially merit to those claims. Thus, because the condition precedent to payment ___ SWPC's full contractual compliance ___ has not been established, the Sureties argue they are not required to pay.

SWPC responds by pointing to another provision of the surety bond, which it asserts controls the question:

> Notwithstanding the provisions herein above, in the event of a dispute between the Principal and Obligee, the Surety shall not be liable to the Obligee until the applicable dispute resolution procedures as outlined in the Agreement have been exercised by the Principal and Obligee, provided, however, that *the Surety shall be liable for those obligations of the Principal which are nevertheless required to be performed by Principal under the Agreement pending the outcome of such dispute resolution procedures.*

(*Id.* at 1 (emphasis added).) The Court agrees with SWPC that this more specific provision is directly on point and controls the issue. The obligation to pay the liquidated damages to the Owner is, as explained above, Dick's obligation, pending the dispute resolution procedures regarding apportionment. As such, the Sureties are jointly and severally liable with Dick for paying the liquidated damages.

## D. *FRAUDULENT INDUCEMENT AND NEGLIGENT MISREPRESENTATION*

Dick asserts that the contract as a whole is voidable because it was the product of negligent misrepresentation and fraudulent inducement. Dick did not raise the issue of fraudulent inducement in its first amended answer and counterclaim – the filing to which SWPC's motion to dismiss and for summary judgment relates – as

either an affirmative defense or a counterclaim. Thus, the affirmative defense of fraudulent inducement is, for now, barred by Federal Rule of Civil Procedure 8(c).

 The affirmative defense of negligent misrepresentation, as stated in that same filing, is vague and conclusory and fails the pleading requirements of Federal Rule of Civil Procedure 9(b). "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989) (citing *Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985)). Dick's first amended complaint and counterclaim merely alleges that SWPC misrepresented the "nature, extent, and scope" of SWPC's duties on the project, without explaining in any detail whatsoever what was said when or by whom. (*See* Defendant Dick Corporation, Continental Casualty Co., and National Fire Ins. Co.'s First Amended Answer and Affirmative Defenses and Dick Corporation's Counterclaim ("Dick First Am. Ans.") 29–30.)

After the briefing on SWPC's motion to dismiss and for summary judgment had begun, Dick sought leave to amend its first amended answer and counterclaim to add more detailed allegations to its counterclaim of negligent misrepresentation, and to add a counterclaim for fraudulent inducement.[2] That motion for leave to amend has not been fully briefed. Based on this procedural peculiarity, the Court will stay its order granting summary judgment until the Court has reviewed the parties' briefing, pursuant to a stipulated schedule, as to (1) whether Dick should be granted leave to amend; and, if leave is granted, (2) whether the updated negligent misrepresentation counterclaim and the new fraudulent inducement counterclaim have merit. If leave is granted and the newly-plead claims are determined meritorious, the Court will issue an amended order denying SWPC summary judgment; otherwise, the Court will lift the stay and enter partial summary judgment on SWPC's behalf on the terms set forth in this Order.

### E. *DISCOVERY UNDER RULE 56(f)*

Dick argues, in the alternative, that it be permitted to seek additional discovery under Federal Rule of Civil Procedure 56(f). In particular, Dick seeks discovery as to (1) the parties' intentions with respect to the Consortium Agreement; (2) the events surrounding the Provisional Acceptance Agreements; and (3) SWPC's knowledge with respect to certain allegedly defective equipment it supplied. (Def. Mem. Ex. A, at 3.)

Rule 56(f) requires the opponent of a motion for summary judgment seeking more discovery to file an affidavit explaining:

1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and

2) how those facts are reasonably expected to create a genuine issue of material fact; and

3) what efforts the affiant has made to obtain those facts; and

4) why those efforts were unsuccessful. *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985). The Court notes that there has not yet been any discovery in this case. Nevertheless, because, as explained above, the Consortium Agreement is unambigu-

---

**2.** The Court may treat these counterclaims as affirmative defenses. *See* Fed.R.Civ.P. 8(c).

ous in regard to Dick's obligation to pay the liquidated damages in the first instance, discovery relating to the parties' intentions on that issue is unnecessary. Similarly, there is no ambiguity as to the provisions of the Provisional Acceptance Agreements which designate an additional $6 million as liquidated damages. The Court has determined that there is still an issue of fact as to whether a $3 million payment relating to a subcontractor's lien actually represents liquidated damages. Thus, to the extent that the Provisional Acceptance Agreements have any bearing on that outstanding issue of fact, the issue is still pending in this litigation and Dick's request for related discovery under Rule 56(f) is thereby rendered moot.

The Court will defer its decision on Dick's request for additional discovery under Rule 56(f) as to SWPC's defective equipment. As explained above, the Court will await full briefing on the issues of whether Dick should be permitted leave to amend its answer and counterclaims and, if so, whether that amended pleading provides an affirmative defense to SWPC's breach of contract claim. The issue of SWPC's knowledge of its defective equipment is relevant to those issues, and the Court concludes it best to await the entire briefing before determining whether to allow for more discovery.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that defendant Dick Corporation ("Dick") is found liable to plaintiff Siemens Westinghouse Power Corporation ("SWPC") for breach of contract in the amount of $15,041,327.98 and the Clerk of Court is directed to enter judgment in that amount; it is further

**ORDERED** that execution on the judgment shall be stayed until the Court issues an amended judgment reflecting the par-

ties' briefing on the issues of negligent misrepresentation and fraudulent inducement; and it is finally

**ORDERED** that Dick and SWPC are directed to submit, within 10 days of the date of this Order, a joint briefing schedule in which they set forth: (1) a date by which SWPC will submit an opposition to Dick's motion for leave to amend and an opposition to the affirmative defenses, as proposed to be amended, of negligent misrepresentation and fraudulent inducement; and (2) a date by which Dick will submit a reply brief with respect to those issues.

**SO ORDERED.**