**SIEMENS WESTINGHOUSE POWER CORPORATION, Plaintiff,**

v.

**DICK CORPORATION, Defendant/Counterclaim Plaintiff,**

**Continental Casualty Company and National Fire Insurance Company of Hartford, Defendants.**

Dick Corporation, on Behalf of the Consortium of Dick Corporation and Siemens Westinghouse Power Corporation, and Individually, Third–Party Plaintiff,

v.

**AES Londonderry, L.L.C., Sycamore Ridge, L.L.C., Stone & Webster, Inc., Limbach Company and Sachs Electric Company, Third–Party Defendants.**

**No. 03 CIV.364 VM.**

United States District Court, S.D. New York.

Nov. 24, 2003.

John T. Bergin, Richard M. Preston, Seyfarth Shaw, Washington, DC, John C. Sabetta, Seyfarth Shaw, New York City, for Continental Cas. Co., Dick Corp., Nat. Fire Ins. Co. of Hartford.

Gregory N. Chertoff, Peckar & Abramson, P.C., New York City, for Siemens Westinghouse Power Corp.

Richard R. Hardcastle, III, Greensfelder, Hemker & Gales, P.C., St. Louis, MI, for Sachs Elec. Co.

David J. Hatem, Warren D. Hutchinson, Mobona F. Mohsin, James K. Schwartz, Donovan Hatem, LLP, Boston, MA, for Stone & Webster, Inc.

Jorge M. Izquierdo–San Miguel, San Juan, PR, John D. Marshall, Jr., Griffin, Cochrane & Marshall, Atlanta, GA, Rachel S. Pauley, James K. Schwartz, Sacks, Montgomery, P.C., New York City, for Limbach Co.

## DECISION AND ORDER

MARRERO, District Judge.

Defendant and third-party plaintiff Dick Corporation ("Dick") and defendants Continental Casualty Company and National Fire Insurance Company of Hartford (collectively with Dick, "Defendants") move this Court to stay an arbitration proceeding between Defendants and third-party defendant Limbach Company ("Limbach"). Because the issue of whether or not to stay the arbitration is a question for the arbitrators, not the Court, and the arbitrators have decided that issue against Defendants, the Court denies the motion.

## I. *BACKGROUND*

Dick is one of two members of a Consortium which agreed to build a power plant

on behalf of certain parties in this litigation to which the Court will refer as the "Owner."[1] Dick hired Limbach as a subcontractor. The project did not go as well as planned, resulting in multi-party arbitration proceedings and the present litigation. The governing subcontract (the "Subcontract") between Dick and Limbach states: "Subcontractor agrees that any dispute of any kind, nature or description or any controversy or claim arising out of or relating to this Subcontract or the breach thereof may, solely at Dick Corporation's election, be settled by ... binding arbitration ...."[2] The contract also provides that, in the event the Consortium and the Owner were to become involved in any legal dispute, Limbach agrees (1) to join and be bound by the results of that proceeding, and (2) "to stay any action" it has filed related to the Consortium–Owner proceeding until the proceeding is complete.[3] By the contract's terms, New York law governs interpretation of the contract.[4]

In December 2002, Limbach became involved in an arbitration with Defendants. In January 2003, the other party to the Consortium brought this action against Defendants. Dick then asserted third-party claims against, among others, Limbach and the Owner. Within days, Defendants moved the arbitrators to stay the arbitration on the ground that the present litigation triggered the subcontract's stay provision. Before the arbitrators resolved that motion, Defendants moved this Court to enjoin the arbitration on the same ground. While this motion was in briefing, the arbitrators concluded that, except for one limited issue, the dispute between Defendants and Limbach was not subject to the stay provision and thereby subject to arbitration.

## II. DISCUSSION

The controlling issue for purposes of this motion is whether this Court or the arbitrators has the authority to decide the applicability of the Subcontract's stay provision. Defendants argue that the applicability of the stay provision is a question of arbitrability and emphasize that, under the Federal Arbitration Act (the "FAA"), 9 U.S.C. 1 et seq., "the issue of arbitrability may only be referred to the arbitrator if 'there is "clear and unmistakable" evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'" Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir.2002) (emphasis in original) (citations omitted). Limbach counters that applicability of the stay provision is not a question of arbitrability in the first instance but rather is an issue relating to the merits and therefore clearly within the all-encompassing arbitration provision. Limbach casts the stay provision as a "condition subsequent," which merely requires the arbitration to be put on hold for the pendency of litigation.

The FAA applies to any contract "evidencing a transaction involving commerce," 9 U.S.C. § 2, and defines "commerce," in relevant part, as "commerce among the several States." 9 U.S.C. § 1.

---

1. A more comprehensive recitation of the facts is reported at *Siemens Westinghouse Power Corp. v. Dick Corp.*, No. 03 Civ. 364, 2003 WL 22383284 (S.D.N.Y. Oct.14, 2003).

2. *See* Memorandum of Law in Support of Dick Corporation's, Continental Casualty Company's and National Fire Insurance Co. of Hartford's Motion to Enjoin Limbach Company from Pursuing its Arbitration Demands in AAA Case No. 11 Y 110 01804 02, dated Sept. 30, 2003, Ex. A at 26.

3. *Id.*

4. *Id.*

The parties cannot seriously dispute that this contract, involving parties from multiple states and tens of millions of dollars, falls within the ambit of the FAA. *See Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (interpreting "involving commerce" to be the functional equivalent of "affecting commerce").

■ The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration ...." *Id.* at 24–25, 103 S.Ct. 927. There is an "important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (quoting *AT & T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)) (alteration in original).

■ However, these rules of construction under the FAA "do[ ] not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). The purpose of the FAA is "to make arbitration agreements as enforceable as other contracts, but not more so" or less so. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The question of whether the parties' dispute falls within the scope of the arbitration agreement is fundamentally a question of state law. *See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F.3d 360, 365 (2d Cir.2003). Accordingly, the Court, keeping in mind the arbitration policies embodied in the FAA, looks to New York law in resolving the motion.

The New York Court of Appeals faced materially the same issue in *HRH Constr. Corp. v. Bethlehem Steel Corp.,* 45 N.Y.2d 675, 412 N.Y.S.2d 366, 384 N.E.2d 1289 (1978). The Court of Appeals' reasoning in that case is highly persuasive. In *HRH,* a general contractor and subcontractor agreed to arbitrate all disputes arising out of their subcontract. *Id.* at 1290. They also agreed to a "proviso" under which, in the event the owner were to bring a legal action against the general contractor, (1) the subcontractor could be required to join the action as a third-party defendant, and (2) the determinations of *that* action would be binding as between the general contractor and subcontractor. *Id.* The general contractor sought a stay of arbitration on the ground that "because of the identity of subject matter of the two sets of claims, the institution by the owner of the legal action operated, *ipso facto,* to remove the claims of the subcontractor against the general contractor to the extent of such identity from the reach of arbitration ...." *Id.* at 1291.

The Court of Appeals upheld the denial of the stay because it concluded the proviso was "not, as the general contractor contends, to be interpreted as an exception to the otherwise broad arbitration provision contained in that section but rather constitutes a restriction on the award which may be made in the arbitration proceeding." *Id.* The Court also noted that to interpret the proviso as a limitation on the scope of arbitration would "produce clum-

sy consequences which we cannot conclude that the draftsmen intended":

> [W]hat would initially be arbitrable would suddenly cease to be arbitrable in consequence of the institution of judicial or arbitration proceedings by a third party, the owner, producing an aberrational result—arbitrability would then hinge on the act of one not a party to the controversy between the general contractor and the subcontractor.

*Id.; see also Silverman v. Benmor Coats, Inc.*, 61 N.Y.2d 299, 473 N.Y.S.2d 774, 461 N.E.2d 1261, 1265 (1984) ("[T]o infer a limitation from the substantive provisions of an agreement containing an arbitration clause calling for arbitration of all disputes arising out of the contract, or for arbitration in some other broadly worded formulation, is to involve the courts in the merits of the dispute—interpretation of the contract's provisions").

 In this case, the parties agreed that arbitration would encompass "any dispute of any kind, nature or description or any controversy or claim arising out of or relating to this Subcontract or breach thereof . . . ." [5] This language is "inclusive, categorical, unconditional, and unlimited." *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir.1996) (holding under similar language that the parties clearly intended to arbitrate arbitrability). The Subcontract's stay provision, notably in a separate subsection, is not worded as an exception to the broad scope of arbitration. Just as in *HRH*, to interpret the stay provision as a limitation on the scope of arbitration would lead to a clumsy result: the arbitrator would be immediately divested of jurisdiction to arbitrate, based upon the actions of a third party, the Owner or the Consortium. In fact, in this case a stay is only required "until the dispute resolution and appeals process between Dick Corporation and the Owner is exhausted." [6] To accept Defendants' reading of the stay provision, the Court would also have to conclude that the arbitrator would be *re*vested of jurisdiction at the termination of this lawsuit. Worse, it would be the Court's job to apply the Subcontract in removing and then restoring jurisdiction to the very arbitrators who have been empaneled to adjudicate a dispute under that Subcontract.

The far more persuasive and practical reading of the Subcontract is that the stay provision is a substantive matter and well within the broad arbitration clause. As such, whether the prerequisites for a stay have been met is a question for the arbitrators, not for this Court. In fact, with one exception not relevant here, the arbitrators have already decided that the prerequisites have *not* been met and therefore have declined to stay those proceedings. Defendants provide no reason why *that* determination meets the extraordinary standard for overturning an arbitrator's decision. *See Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir.1978) (court may not overturn arbitration award as long as there is a "barely colorable justification for the outcome reached").

Alternatively, the Court agrees with the arbitrators' conclusion and finds that the contract's stay provision is plainly not implicated. The stay provision is implicated only "[i]f the Owner *and the Consortium* . . . submit any dispute, controversy, or claim between them to arbitration or other disputes resolution procedure . . . ." [7] The Consortium is not involved in any dispute against the Owner. Only Dick has sued the Owner, and the contract creating the

**5.** *Id.*

**6.** *Id.*

**7.** *Id.*

Consortium specifically prohibits one party from bringing any legal action in the Consortium's name without consent of the other party.

### III. ORDER

For the reasons discussed, it is hereby

**ORDERED** that the motion of Dick Corporation, Continental Casualty Company, and National Fire Insurance Company of Hartford to enjoin its arbitration proceedings with Limbach Company is denied.

**SO ORDERED.**