SIEMENS WESTINGHOUSE POWER
CORPORATION, Plaintiff,

v.

DICK CORPORATION,
Defendant/Counterclaim Plaintiff,

Continental Casualty Company and
National Fire Insurance Company
of Hartford, Defendants.

Dick Corporation, on Behalf of the Consortium of Dick Corporation and Siemens Westinghouse Power Corporation, and Individually, Third–Party Plaintiff,

v.

AES Londonderry, L.L.C., Sycamore Ridge, L.L.C., Stone & Webster, Inc., Limbach Company and Sachs Electric Company, Third–Party Defendants.

No. 03 CIV.364 VM.

United States District Court,
S.D. New York.

Jan. 14, 2004.

Gregory N. Chertoff, Peckar & Abramson, P.C., New York, NY, for Plaintiff.

John T. Bergin, Richard M. Preston, Seyfarth Shaw, Washington, DC, John C.

Sabetta, Seyfarth Shaw, New York, NY, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Defendant and third-party plaintiff Dick Corporation ("Dick") moves this Court for leave to file a second amended answer and counterclaim for the purpose of, among other things, adding updated counterclaims of negligent misrepresentation and fraudulent concealment. Plaintiff Siemens Westinghouse Power Corporation ("SWPC") opposes the motion on the ground that the proposed amended filing would be futile with respect to those counterclaims. The Court agrees that those claims would not survive a motion to dismiss because they fail to sufficiently allege justifiable reliance upon the alleged misrepresentations and omissions. The motion is therefore denied with respect to those proposed amendments, and, in all other respects, granted.

The Court also addresses motions to dismiss Dick's third-party complaint. Because the third-party complaint is not proper under Federal Rule of Civil Procedure 14, it is dismissed. Dick seeks to amend its third-party complaint, as well. However, the proposed new filing does not remedy the Rule 14 defect and therefore the motion to amend is denied.

## I. BACKGROUND

SWPC and Dick formed a Consortium for the purpose of constructing a power plant in Londonderry, New Hampshire on behalf of global power company AES Corporation ("AES"). Two AES subsidiaries, AES Londonderry, LLC, and Sycamore Ridge Co., LLC (collectively, the "Owners"), are signatories to the relevant contracts parties to this action. Because of delays in the project, SWPC has paid ex-

tensive liquidated damages to the Owners. SWPC filed a complaint seeking reimbursement of those payments from Dick, and from Dick's sureties. SWPC moved the Court for partial summary judgment, and the Court granted, in part, SWPC's motion. *See Siemens Westinghouse Power Corp. v. Dick Corp.*, 293 F.Supp.2d 336, 2003 WL 22383284 (S.D.N.Y. Oct.14, 2003). The Court determined that, under the Consortium Agreement, Dick was responsible for paying liquidated damages to the Owners in the first instance and that the parties were to later determine, by applying certain formulas in the Consortium Agreement, SWPC's share of those damages. *See id.* at 340. Accordingly, the Court determined that, for now, Dick owed SWPC about $15 million. *Id.* at 343–44.

In opposing that summary judgment motion, Dick asserted that the Consortium Agreement was the product of negligent misrepresentation. The Court found that defense, as stated in the first amended answer and counterclaim, to lack the particularity required under Federal Rule of Civil Procedure 9(b). *See id.* at 343. While the summary judgment motion was in briefing, Dick filed a motion for leave to file a second amended answer and counterclaim. The proposed new filing contained, among other changes, more specific allegations of negligent misrepresentation and a related counterclaim for fraudulent concealment. Specifically, Dick alleges that SWPC, via misrepresentations and omissions, disguised the fact that a certain combustion turbine SWPC supplied to the project was still experimental and therefore not ready for commercial operation. Dick maintains that these counterclaims serve as valid defenses to SWPC's contract remedies at issue in the summary judgment motion.

The Court did not address the updated allegations because it had yet to determine

whether Dick was entitled to leave to amend, and because SWPC's motion related to Dick's first amended answer and counterclaim. The Court stayed entry of its judgment for the purpose of determining whether Dick was entitled to leave to amend, and if so, whether those counterclaims would suffice as defenses to defeat SWPC's motion for partial summary judgment. *See id.* This Decision and Order addresses the issue of whether Dick is entitled to leave to amend.

Dick's second amended counterclaims for negligent misrepresentation and fraudulent concealment describe the following facts, which the Court will assume are true for purposes of this motion. At the inception of the power plant project in December 1999, Stone & Webster, Inc. ("Stone & Webster") agreed with the Owners to supply engineering, procurement, and construction services (the "EPC contract") to the project. SWPC agreed to provide around $164 million in equipment, including two combustion turbines. When Stone & Webster went bankrupt shortly thereafter, the remaining parties scrambled to find a new EPC contractor.

The Owners hoped to get SWPC to agree to be the EPC contractor, but SWPC refused. The Owners and SWPC then approached Dick in May 2000 with the prospect of joining the project. Dick "diligently attempted to investigate the Project . . ., but the time period afforded to Dick to investigate the prior design and construction efforts on the Project, as well as its overall viability, was extremely short." Proposed Second Amended Counterclaim ¶ 25. The other project participants, including SWPC, knew that time was short and that Dick would rely on their representations in deciding whether to join the project. By September 2000, Dick and SWPC agreed to complete the project as a Consortium. The Consortium

Agreement incorporated SWPC's previous commitment to supply the equipment.

Dick now asserts it never would joined the project if it had known the truth about its viability. Dick alleges that SWPC, among others, made several material misrepresentations and omissions in the period between May and September 2000, when Dick was deciding whether to participate.

The Consortium Agreement provided that SWPC would have a total of seventy-five (75) days—called "pool days"—to perform "corrective work" on certain equipment it supplied, before being responsible for any delay attributable to defects in the equipment. Dick therefore anticipated that SWPC would require around that many days in corrective work. It turns out that SWPC spent over two hundred (200) days doing corrective work, causing a massive delay in the project overall. Dick attributes the unanticipated delay to the fact that SWPC's combustion turbine was still experimental and, therefore, not commercially viable. Dick states that SWPC knew or should have known this fact, but never alerted Dick before Dick signed the Consortium Agreement.

Dick directs the Court's attention to a March 2000 bond offering prospectus for a company formed to build and operate a power plant in Pennsylvania, and for which SWPC supplied two of the exact model of combustion turbine at issue here. Under the heading "Summary of Risk Factors," that prospectus states: "The success of our project and future operations may be impaired because . . . the combustion turbine to be used in our facility has no significant operating experience, and we may incur problems relating to start-up, commissioning and performance." Second Affidavit of Keith A. Moatz, dated Dec. 4, 2004, Ex. 14, at 19. The prospectus also states that the turbines in question were to

become only the third and fourth ones of that make and model in operation. *Id.* at 20. SWPC's failure to inform Dick of the true nature of its combustion turbines is the essence Dick's counterclaims for negligent misrepresentation and fraudulent concealment.

SWPC opposes the motion for leave to amend only with respect to the proposed changes regarding negligent misrepresentation and fraudulent concealment, and only upon the ground that the changes would be futile. The issue here is therefore narrow: whether Dick's proposed second amended answer and counterclaim states claims for relief for either negligent misrepresentation or fraudulent concealment.

## II. *DISCUSSION*

### A. *LEAVE TO AMEND*

Although leave to amend "shall be freely given," Fed.R.Civ.P. 15(a), and the Court must generally have good reason to deny the motion, "[o]ne good reason to deny leave to amend is when such leave would be futile." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir.1995). "Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss." *Nettis v. Levitt*, 241 F.3d 186, 194 n. 4 (2d Cir.2001).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the factual allegations of the non-moving party (here, counter-claimant and defendant Dick) and must draw all reasonable inferences in favor of that party. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The Court may not grant the motion "unless it appears beyond doubt" that the counterclaimant "can prove no set of facts" which

would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Allegations of "fraud or mistake" will be dismissed unless they are stated "with particularity." Fed. R.Civ.P. 9(b). The particularity requirement of Rule 9(b) also applies to claims of negligent misrepresentation. *Marcus v. Frome*, 275 F.Supp.2d 496, 503 (S.D.N.Y. 2003).

SWPC puts forth several reasons why the proposed counterclaims would be futile, including that Dick has failed to meet the particularity requirements of Federal Rule of Civil Procedure 9(b), and failed to allege causes of action sufficiently distinct from its breach of contract counterclaim. Without addressing all of those arguments, the Court agrees with SWPC on a point which is dispositive of this motion: Dick's proposed amended counterclaims do not allege justifiable reliance and would therefore not survive a motion to dismiss. Accordingly, to the extent Dick seeks to add these claims in an amended pleading, the motion is denied.

To recover under either a theory of fraud or negligent misrepresentation, the plaintiff (or, in this case, the counterclaimant) must allege facts demonstrating reliance on the alleged fraud or misrepresentation, and that the reliance was justified under the circumstances. *See Rotanelli v. Madden*, 172 A.D.2d 815, 569 N.Y.S.2d 187, 188 (App. Div.2d Dep't 1991); *Cudemo v. Al & Lou Constr. Co., Inc.*, 54 A.D.2d 995, 387 N.Y.S.2d 929, 930 (App. Div.2d Dep't 1976). Dick alleges it justifiably relied on SWPC's assurances that the combustion turbines did not have any major problems, and upon SWPC's implicit assurances that they could be successfully installed without delays beyond the seventy-five pool days provided in the

Consortium Agreement.[1] The Court disagrees.

■ Where there is a "meaningful" conflict between a written contract and prior oral representations, a party will not be deemed to have justifiably relied on the prior oral representations. *Bango v. Naughton*, 184 A.D.2d 961, 584 N.Y.S.2d 942, 944 (2d Dep't 1992) ("[T]he conflict between the provisions of the written contract and the oral representations negates the claim of reliance upon the latter."). In this case, any reliance upon SWPC's explicit or implicit assurances was unjustified because the Consortium Agreement expressly contemplates the eventuality that SWPC would incur delays beyond the allotted pool days. Specifically, the Consortium Agreement provides a formula for SWPC's liability, in the event SWPC exceeded its pool days to perform corrective work. *See* Affidavit of Howard F. Jenkins, dated July 17, 2003, Ex. B, at 23–28. In fact, the Consortium Agreement specifically states that "Corrective Work" includes work performed "in connection with . . . implementation of a design change in the [combustion turbine] . . . which has been identified by [SWPC] as a problem with similar equipment which must be corrected or implemented prior to the operation of the [combustion turbine] . . . ." *Id.* at 25. In other words, the parties contemplated design modifications which would come to light because of problems with "similar equipment."

By accounting for the eventuality of delay for corrective work, these provisions implicitly contradict the alleged assurances and omissions suggesting that the combustion turbine would be operational more swiftly. *Cf. Clanton v. Vagianelis*, 187 A.D.2d 45, 592 N.Y.S.2d 139, 141 (App. Div.3d Dep't 1993) (holding that, even though contract language did "not *expressly* contradict defendants' prior alleged oral misrepresentation," the implicit conflict sufficiently precluded allegations of justified reliance) (emphasis in original). The fact that the contemplated delays ended up being allegedly much more extensive than anticipated means only that Dick may be entitled to more relief under the Consortium Agreement, not that Dick is entitled to declare the whole agreement a fraud.

■ Moreover, under New York law, "[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir.1984); *see also Rudolph v. Turecek*, 240 A.D.2d 935, 658 N.Y.S.2d 769, 771 (App. Div.3d Dep't 1997) ("[W]here a party has the means, by the exercise of reasonable diligence, to ascertain the truth or falsity of material representations, he or she cannot assert justifiable reliance."). Dick does not deny that the parties to this multimillion-dollar deal are sophisticated businesses; Dick instead asserts that the combustion turbine problems were uniquely within SWPC's knowledge. However, Dick's own filings demonstrate that it was aware of several other SWPC projects involving the combustion turbine at issue. For example, Dick's proposed second amended counterclaim indicates that it based much of its pricing on the power plant project in Pennsylvania—

---

1. Although Dick's briefing suggests that SWPC made certain affirmative representations regarding the viability of the combustion turbines, the proposed second amended complaint does not identify any particular alleged misrepresentation. Instead, it merely makes the broad assertion that SWPC "knowingly concealed/failed to disclose" the true state of affairs. Proposed Second Amended Counterclaim ¶ 131.

precisely the project whose prospectus identifies the prototypical nature of the combustion turbine. Dick fails to explain why it could not obtain this prospectus—a public document—or any other relevant information about this and other SWPC power plant projects at any time between May and September 2000. Importantly, Dick does not allege that SWPC took any affirmative steps to prevent Dick from discovering these facts. If the facts are as Dick alleges, Dick will have to seek relief against SWPC under the terms of the Consortium Agreement.

Dick proposes a few more amendments to its counterclaims, and SWPC does not appear to challenge those. Accordingly, Dick's motion is granted in that regard only. Because Dick no longer has raised any valid defense to its liability to pay liquidated damages in the first instance, the Court will enter judgment on SWPC's behalf on the terms of the Court's previous Decision and Order. *See Siemens Westinghouse Power Corp.*, 293 F.Supp.2d at 343.

## B. MOTIONS TO DISMISS THIRD-PARTY COMPLAINT

■ Limbach Company, the project's piping subcontractor, Stone & Webster, and the Owners (collectively, the "Third-Party Defendants") brought separate motions to dismiss Dick's first amended third-party complaint. Dick's first amended third-party complaint seeks, among other things, to hold liable the Third–Party Defendants for misrepresenting the nature of the project to Dick, and for various shortcomings in executing the project. The motions raise many arguments, but they share a common and dispositive argument, with which the Court agrees: the third-party claims do not meet the standard of Federal Rule of Civil Procedure 14(a) and therefore must be dismissed.

■ Under Rule 14(a), a defendant may bring claims against any person who "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R.Civ.P. 14(a). "The crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1446, at 377 (2d ed.1990). In other words, "[t]he outcome of the third-party claim must be *contingent* on the outcome of the main claim ...." *Nat'l Bank of Canada v. Artex Indus., Inc.*, 627 F.Supp. 610, 613 (S.D.N.Y.1986) (emphasis added).

As explained more fully in the Court's summary judgment Decision and Order, SWPC's complaint against Dick raises the narrow issue of whether Dick must reimburse SWPC for the up-front payments of certain liquidated damages, before SWPC and Dick apportion the responsibility between each other. *See Siemens Westinghouse Power Corp.*, 293 F.Supp.2d at 341. Whether any Third–Party Defendant committed contract breaches or torts affecting the *ultimate* apportionment of liquidated damages is not contingent in any way upon the narrow question of which Consortium member is liable for the up-front payments under the Consortium Agreement.

■ Even though the third-party claims involve the same power plant project as the principal complaint, "[t]he mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." 6 Wright, *supra*, at 377–79; *see also Int'l Paving Sys., Inc. v. Van–Tulco, Inc.*, 866 F.Supp. 682, 687 (E.D.N.Y.1994). The fact that the allegations in the third-party complaint may depend on the adjudication of Dick's own counterclaims against SWPC is

also insufficient because the plain language of Rule 14(a) requires the third-party claim to depend upon the "the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a); *see also Baltimore & Ohio R. Co. v. Central Ry. Services, Inc.,* 636 F.Supp. 782, 786 (1986). Accordingly, Dick's first amended third-party complaint must be dismissed.

Dick has moved to amend its first amended third-party complaint and has submitted a proposed second amended third-party complaint. The Court finds nothing in the proposed second amended third-party complaint that remedies the deficiencies identified here. Thus, the proposed new filing would be futile, and the motion is denied.

## III. *ORDER*

For the reasons stated, it is hereby

**ORDERED** that the motion of defendant and third-party plaintiff Dick Corporation ("Dick") for leave to amend and file a second amended answer and counterclaim is granted in part and denied in part. To the extent Dick seeks to add or update claims or defenses of negligent misrepresentation or fraudulent concealment, the motion is denied. In all other respects the motion is granted; it is further

**ORDERED** that Dick is found liable to plaintiff Siemens Westinghouse Power Corporation ("SWPC") for breach of contract in the amount of $15,041,327.98, in accordance with the Court's Decision and Order dated October 14, 2003, and the Clerk of Court is directed to enter judgment on SWPC's behalf in that amount; it is further

**ORDERED** that the first amended third-party complaint of Dick is dismissed and the Clerk of Court is directed to enter judgment on behalf of third-party defendants Limbach Company, AES London-derry, LLC, Sycamore Ridge Co., LLC, and Stone & Webster, Inc., dismissing Dick's claims against them; and it is finally

**ORDERED** that Dick's motion to amend its first amended third-party complaint is denied.

**SO ORDERED.**