Bernard MARCUS, Performance
Capital LLC and Webnet
Design LLC, Plaintiffs,

v.

Robert FROME and Olshan Grundman
Frome Rosenzweig & Wolesky,
LLP Defendants.

No. 02 Civ.6192 JGK.

United States District Court,
S.D. New York.

Aug. 5, 2003.

Leon Baer Borstein, New York City, for Plaintiffs.

## OPINION AND ORDER

KOELTL, District Judge.

This action alleges violations of the federal securities laws and common law based on the allegedly false and misleading statements made by the defendants Robert Frome ("Frome") and the law firm of Olshan Grundman Frome Rosenzweig & Wolesky, LLP ("Olshan") in a Purchase Agreement executed between Bernard Marcus ("Marcus"), Performance Capital LLC ("Performance"), and Webnet Design LLC ("Webnet") (collectively "the plaintiffs") and The Continuum Group ("Continuum") which transferred various assets to Continuum in return for money and shares of Continuum stock. The action also alleges fraud and misleading statements in an Opinion Letter issued by Olshan in connection with the closing of the Purchase Agreement.[1]

The First Amended Complaint (the "Complaint") asserts five causes of action including (1) violations of § 10b of the

---

1. The Original Complaint named Continuum as a defendant. After a conference held in this case, the Court permitted the plaintiffs to file an Amended Complaint, and denied the motions filed by the defendants to dismiss the original complaint as moot. Thereafter the plaintiffs filed the First Amended Complaint, which did not name Continuum as a defendant in the caption. In addition, the Docket Sheet indicates that Continuum was terminated as a defendant on February 26, 2003, the date that the First Amended Complaint was filed with the Court.

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5 against Frome and Olshan (Count 1); violations of § 20 of the Exchange Act, 15 U.S.C. 78t, against Frome (Count 2); common law fraud against Frome (Count 3); common law fraud against Olshan (Count 4); and negligent misrepresentation against Olshan (Count 5).

The defendants now move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b), with respect to the claim under § 10(b) and Rule 10b–5, on the grounds the plaintiffs have failed to plead fraud with particularity as required by Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). The defendants also argue that the plaintiffs have failed to plead scienter adequately as required by Rule 9(b) and the PSLRA. In addition, Frome seeks to dismiss the § 20 claim, arguing that the plaintiffs have failed to plead facts to support the underlying liability and therefore he cannot be held liable as a control person under § 20. Frome also moves to stay the first three claims against him on the ground that those claims must be arbitrated under the Purchase Agreement.

## I.

On a motion to dismiss, the allegations in the Complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable inferences are drawn in the plaintiffs' favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the

defendants' motion to dismiss should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon*, 147 F.3d at 188; *Goldman*, 754 F.2d at 1065.

In deciding the motion, the Court may consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002); *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991); *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F.Supp.2d 435, 437 (S.D.N.Y.2001). "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it relies and which is integral to the complaint, the court may nonetheless take the document into consideration in deciding the defendant[s'] motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir.1995) (internal citation and quotation marks omitted); *see Yucyco, Ltd. v. Republic of Slovenia*, 984 F.Supp. 209, 215 (S.D.N.Y.1997). Accordingly, the following facts alleged in the Complaint are accepted as true for the purposes of this motion.

On or about May 5, 2000 after a series of negotiations, Continuum executed a Purchase Agreement with Webnet, Performance, Marcus, and two other parties. (Compl.¶ 9.) At the time of the execution of the Purchase Agreement, Frome was

President and a director of Continuum. (Comp.¶ 10.) At the time of the execution of the Purchase Agreement, the managing member of Performance and Webnet was Marcus. (Compl.¶¶ 11–12.) Continuum, at the time of the Purchase Agreement's execution, was a shell corporation incorporated in Delaware, whose shares of common stock were listed on the Over–the–Counter market and were registered with the Securities and Exchange Commission. (Comp.¶ 13.)

In accordance with the terms and conditions of the Purchase Agreement, the plaintiffs agreed to transfer certain assets to Continuum in exchange for 16,230,000 shares of Continuum Common Stock and $150,000 to be paid to Andrew Chandler. (Compl.¶ 14.)

The plaintiffs allege the existence of various misrepresentations in the Purchase Agreement that form the basis of their claims of securities fraud and common law fraud and negligent misrepresentation. First, the plaintiffs allege that § 4.1 of the Purchase Agreement was false because it represented that the plaintiffs would be provided with a true and complete copy of Continuum's Certificate of Incorporation in effect on the date of the execution of the Purchase Agreement, when, in fact, an Amended Certificate of Incorporation, not provided to the plaintiffs, was in effect and in force on the date of the Purchase Agreement. (Compl.¶¶ 16–18.) Second, the plaintiffs allege that the Purchase Agreement's warranty that Continuum was a Delaware Corporation in good standing was false because Continuum not a Delaware Corporation in good standing at the time the Agreement was executed, because Continuum had failed to pay certain franchise taxes. (Compl.¶¶ 19–20.) Third, the plaintiffs allege that § 4.3 of the Purchase Agreement was false, because it represented that the Purchase Agreement would not materially conflict with or result in the breach of any other agreement to which Continuum was a party, when in fact the Purchase Agreement conflicted with, among other things, an earlier Private Purchase Memorandum, and a Joint Plan of Reorganization. (Comp.¶¶ 21–25.) Fourth, the plaintiffs allege that § 4.5 of the Purchase Agreement was false because it overstated the number of outstanding shares of Continuum Common Stock. (Compl.¶¶ 26–27.) Fifth, the plaintiffs allege that § 4.6 of the Purchase Agreement was false because it represented that Continuum had no debts, liabilities, or obligations outside of those incurred in connection with the Purchase Agreement, when in fact, Continuum owed various taxes and had other outstanding liabilities. (Compl.¶¶ 28–32.) Sixth, the plaintiffs allege that § 4.9 of the Purchase Agreement was false because it represented that Continuum was a reporting company pursuant to the Exchange Act, when, in fact, Continuum was not a reporting company on the date the Purchase Agreement was executed. (Compl.¶¶ 33–35.) Seventh, the plaintiffs allege that § 4.10 of the Purchase Agreement was false because Continuum had not fully complied with the terms of the plan of reorganization, when it had represented that it had. (Compl.¶¶ 36–38.) Finally, the plaintiffs allege, by referencing the prior seven alleged misrepresentations, that any warranty made in the Purchase Agreement or certificate issued at the time of execution of the Purchase Agreement stating that any of Continuum's prior warranties and representations were true when made and at the closing was necessarily false. (Compl.¶¶ 39–42.)

The plaintiffs also raise allegations against Olshan. At the time of the closing of the Purchase Agreement, Olshan was required to issue an opinion letter to the plaintiffs and other parties to the Purchase Agreement. (Compl.¶¶ 45–46.) The plain-

tiffs allege that representations made in the opinion letter issued by Olshan were false. (Compl. ¶¶ 47–49.)

## II.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange-

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Similarly, Rule 10b–5, promulgated under § 10(b) and codified at 17 C.F.R. § 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

## A.

■ Olshan first moves to dismiss the securities fraud claim on the grounds that the plaintiffs have failed to satisfy Rule 9(b) and the PSLRA's requirement that fraud be pleaded with particularity.

Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed R. Civ. P. 9(b); *see Four Finger Art Factory v. Dinicola,* No. 99 Civ. 1259, 2001 WL 21248, at *5 (S.D.N.Y. Jan. 9, 2001). To meet the requirements of Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993).

The PSLRA also requires that allegations of securities fraud based on misrepresentations or omissions of material facts be made with particularity. The PSLRA provides, in relevant part,

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1). A complaint alleging violations of § 10(b) and Rule 10b–5 must, therefore, also satisfy the PLSRA's pleading requirements. *See Novak v. Kasaks,* 216 F.3d 300, 306–07 (2d Cir.2000).

Olshan argues that the plaintiffs have failed to satisfy Rule 9(b) and the PSLRA with respect to the allegations of securities fraud raised against Olshan because they have not alleged why the alleged misrepresentations in the Opinion Letter are fraudulent. Because the statements in the

Opinion Letter are identical to statements contained in the Purchase Agreement, and because the plaintiffs have alleged why the statements in the Purchase Agreement are false, the Complaint alleges why the statements in the Opinion letter are false.

The plaintiffs allege that Olshan was required to issue an Opinion Letter, and then quote various portions of the Opinion Letter. (Compl.¶¶ 47–48.) The Opinion Letter contains two representations that are also found in the Purchase Agreement, namely that Continuum was a Delaware corporation in good standing and that the terms of the Purchase Agreement did not conflict with any other agreement. (Compl.¶ 48.) The next paragraph of the Complaint states "[t]he foregoing quoted portion of the Opinion, as alleged in the foregoing allegations, was false" and thus indicates that the two statements were false for the same reasons that the statements in the Purchase Agreement were false. (Compl.¶ 49.)

The Complaint alleges why the two statements in the Purchase Agreement were false. The plaintiffs have alleged that the statement that Continuum was a Delaware corporation in good standing was false because the company had failed to pay various franchise taxes. (Compl.¶ 19.) The plaintiffs have also explained why the representation that the Purchase Agreement did not conflict with any other agreement was false by pointing to other agreements that conflicted with the Purchase Agreement including the Joint Plan of Reorganization and the Private Placement Memorandum. (Compl.¶¶ 22–25.) Because the plaintiffs have alleged why the statements in the Purchase Agreement are false, they have alleged why those statements, when contained in the Opinion Letter issued by Olshan, were false. Indeed Olshan conceded at oral argument that it was not arguing that the claims against it should be dismissed for failure to allege

why the Opinion Letter was false, but rather for the failure to allege the requisite state of mind for fraud. Those issues are discussed below.

### B.

 Both Frome and Olshan seek to dismiss the securities fraud claim in Count One on the grounds that the plaintiffs have failed to plead scienter adequately.

In order to state a claim brought pursuant to § 10b and Rule 10b–5, a plaintiff must prove that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on defendant's action caused [plaintiff] injury." *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir.2000) (alteration in original) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 266 (2d Cir.1996)); *see also Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir.2001) (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996)); *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259, 264 (2d Cir.1993).

In the context of securities fraud statutes, scienter "means intent to deceive, manipulate, or defraud, or at least knowing misconduct." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir.1996) (citations omitted); *see also S.E.C. v. Todt*, No. 98 Civ. 3980, 2000 WL 223836, at *9 (S.D.N.Y. Feb. 25, 2000) *aff'd*, 7 Fed.Appx. 98, 2001 WL 345151 (2d Cir.2001). Scienter may be inferred from proof of "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" or from proof that a defendant had "both motive and opportunity to commit fraud." *Rothman*, 220 F.3d at 90; *see also Kalnit*, 264 F.3d at 138; *Chill*, 101 F.3d at 267. An "egregious refusal to see

the obvious, or to investigate the doubtful, may in some cases give rise to an inference of ... recklessness." *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir.2000) (quotations omitted). Accordingly, liability can arise where a defendant "should have known that [the defendants were] misrepresenting material facts related to the corporation...." *Novak,* 216 F.3d at 308 (2d Cir.2000).

Moreover, allegations of securities fraud under § 10(b) and Rule 10b–5 are subject to Fed.R.Civ.P. 9(b) and the PSLRA's requirements regarding scienter. *See* 15 U.S.C. § 78u–4(b)(2); *Chill,* 101 F.3d 263, 266 (2d Cir.1996); *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995); *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127–28 (2d Cir.1994). Under the PSLRA, "plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," namely the intent to "deceive, manipulate, defraud, or knowing misconduct." *Press v. Chemical Inv. Services Corp.,* 166 F.3d 529, 537–38 (2d Cir.1999). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields,* 25 F.3d at 1128, *quoted by Press,* 166 F.3d at 538.

Both defendants argue that the Complaint fails to allege that they possessed the requisite ·scienter as required by the PSLRA and Rule 9(b). The plaintiffs do not argue in their responsive papers that they have alleged the existence of motive and opportunity to commit fraud, but instead argue that they have alleged sufficient facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. Specifically, the plaintiffs argue that Olshan, in writing the Opinion Letter, had access to facts that allowed it to know that the representations being made in the Opinion Letter were false, and that Frome, when entering into the Purchase Agreement on behalf of Continuum, also had access to documents that allowed him to know that the representations in the Purchase Agreement were false.

These allegations are insufficient to plead the existence of conscious misbehavior or recklessness. The Court of Appeals has explained, that "securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants ....access to information contradicting their public statements." *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir.2000); *see also Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir.2001). In this case, however, the Complaint does not even contain any general allegation that either defendant had access to the relevant documents. The fact that the plaintiffs may argue now that the defendants had access to or discovered information or documents that contradicted the representations made in the Purchase Agreement does not overcome the lack of an allegation in the Complaint that the defendants had access to those documents or even knew of their existence. The Complaint does not allege the defendants had access to any document, does not mention any particular document or information that the defendants had access to, and does not allege that the information contained in those documents, whatever they were, was inconsistent or contradicted the information that formed the basis of the defendants' public statements. The Complaint is replete with allegations of when the plaintiffs allegedly became aware of the allegedly false representations but is devoid of allegations as to when or how the defendants became aware of the falsity of the representations. The Complaint therefore does not contain any allegation

of recklessness and could not satisfy the scienter requirement under the PSLRA. *See In re Sotheby's Holdings, Inc.,* No. 00 Civ. 1041, 2000 WL 1234601, at *7–8 (S.D.N.Y. Aug. 31, 2000) (noting that failure to identify specific documents or information contradicting public statements constitutes "failing" of Complaint to adequately plead recklessness or conscious misbehavior).

The defendants' motion to dismiss the claim for securities fraud under § 10(b) and Rule 10b–5 is therefore granted.

### III.

■ Frome also moves to dismiss Count 2 of the Complaint alleging a violation of § 20(a) of the Exchange Act. Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t. To make out a prima facie case under Section 20(a) a plaintiff "must show a primary violation [of the Exchange Act] by the controlled person and control of the primary violator by the targeted defendant, and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *First Jersey Sec. Inc.,* 101 F.3d at 1472 (quotations and internal alterations omitted). The plaintiffs have not even alleged securities fraud violations by Continuum, the allegedly controlled entity, since they are not a defendant in this action. In addition, to the extent that the allegations in the Complaint are construed to be an violation of § 10(b) and Rule 10b–5 by Continuum, for the reasons explained above, those allega-

tions are insufficient to state a claim under § 10(b) and Rule 10b–5 because they fail to allege scienter adequately, and therefore, Frome could not be held liable as a control person because the allegations of the underlying liability of the controlled entity are insufficient. Consequently, the § 20(a) claim against the defendant Frome is dismissed.

### IV.

■ Olshan and Frome have also moved to dismiss the plaintiffs' claim for common law fraud. A claim for common law fraud under New York law must also satisfy the requirements of Fed.R.Civ.P. 9(b). *AIG Global Secs. Lending Corp. v. Banc of Am. Secs. LLC,* 254 F.Supp.2d 373, 389 (S.D.N.Y.2003); *Lewis v. Rosenfeld,* 138 F.Supp.2d 466, 477–78 (S.D.N.Y.2001). For the reasons explained above with respect to the § 10(b) and Rule 10b–5 claim and with respect to both defendants, the allegations in the Complaint fail to satisfy Rule 9(b)'s scienter requirement. This failure to satisfy Rule 9(b) requires that the plaintiffs' claims for common law fraud against Frome and Olshan be dismissed. *See AIG Global Secs. Lending Corp.,* 254 F.Supp.2d at 389; *Rich v. Maidstone Fin., Inc.,* No. 98 Civ. 2569, 2002 WL 31867724, at *13 (S.D.N.Y. Dec. 20, 2002).

### V.

■ Olshan also seeks to dismiss the plaintiffs' claim of negligent misrepresentation. A claim for negligent misrepresentation must also satisfy the requirements of Rule 9(b) and because the plaintiffs have failed to satisfy Rule 9(b), this claim must also be dismissed. *AIG Global Secs. Lending Corp.,* 254 F.Supp.2d at 389; *Simon v. Castello,* 172 F.R.D. 103, 105–06 (S.D.N.Y.1997).

## VI.

■ Frome has moved to stay any claims raised against him on the grounds that the Purchase Agreement provides that any claims arising out of or relating to the Purchase Agreement are to be resolved by arbitration. Frome argues that because the claims against him, including the claim under § 10(b) and Rule 10b–5, are based on alleged misrepresentations in the Purchase Agreement, the arbitration provisions in the agreement apply, and that the claims against him should be stayed pending the outcome of any arbitration proceeding.

Frome's application to stay is governed by the Federal Arbitration Act, which provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. *See also In re Home Ins. Co.,* 908 F.Supp. 180, 183 (S.D.N.Y.1995). Unless the parties explicitly provide otherwise, this Court, rather than an arbitrator, determines whether the parties did in fact agree to arbitration. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996).

Whether an agreement to arbitrate governs a particular dispute is essentially a matter of contract interpretation. *See Collins & Aikman Products Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d Cir.1995) ("Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract."); *see also Home Ins. Co.,* 908 F.Supp. at 183. Any doubts about the scope of arbitrable issues should be resolved in favor or arbitration. *Collins,* 58 F.3d at 19 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see also United States Fire Ins. Co. v. Nat'l Gypsum Co.,* 101 F.3d 813, 816 (2d Cir.1996).

Section 10.8 of the Purchase Agreement provides, in relevant part:

> Each of the parties hereto hereby irrevocably consents to arbitration of any dispute, controversy or claim arising out of or relating to this Agreement. Each of the parties hereto hereby irrevocably waives, to the fullest extent legally possible, any objection to the use of arbitration to resolve any such dispute, controversy or claim. If the parties in good faith cannot resolve any controversy or claim arising out of or related to this Agreement or in connection with a breach thereof within ten days after the claimant gives written notice of such controversy or claim to the other party, either party may demand and commence arbitration of the controversy or claim.

(Purchase Agreement § 10.8). The plain text of this provision provides for the arbitration of disputes that arise out of or relate to the Purchase Agreement. This is a broad arbitration clause. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 225 (2d Cir.2001). It requires the arbitration of "any dispute, controversy or claim arising out of or relating to" the Purchase Agreement. The plaintiffs do not dispute that the arbitration clause would cover the claims alleged in the Complaint as they relate to the Purchase Agreement. However, they contend that a stay could not be granted because Frome, who is not a party to the Purchase Agreement, does not have the right to invoke the arbitration clause. In addition, the plaintiffs argue that to the extent that the arbitration clause could be invoked by Frome, because Frome has not actually demanded arbitration, there is no basis to stay the claims raised against him.

In *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1360 (2d Cir.1993), the Court of Appeals stated "[c]ourts in this and other circuits consistently have held that employees or disclosed agents of an entity

that is a party to an arbitration agreement are protected by that agreement." However, in *Cotton v. Slone,* 4 F.3d 176, 177 (2d Cir.1993), the Court of Appeals noted this quotation from *Roby,* but stated that the question of whether an employee of an entity that is a party to the arbitration agreement is also covered by that arbitration clause was not decided in *Roby.*

Irrespective of wether the statement in *Roby* can be considered binding authority on this Court, it is in line with wide judicial consensus on this issue. *See Thomas v. A.R. Baron & Co., Inc.,* 967 F.Supp. 785, 788 (S.D.N.Y.1997) (collecting cases). Morever, as the court in *Roby* stated, were claims against the employees or disclosed agents not also subject to arbitration, "it would be too easy to circumvent the agreements by naming individuals as defendants instead of the entity Agents themselves." *Roby,* 996 F.2d at 1360.

The claims against Frome, in this case, are based on the conduct of Continuum, and because Continuum would be entitled to seek arbitration under the Purchase Agreement, Frome, as an employee of Continuum, is also entitled to seek arbitration under the Agreement. *See Thomas,* 967 F.Supp. at 789. Moreover, in this case, the plaintiffs were signatories to the Purchase Agreement that contained the arbitration clause and thus cannot complain that they are being subjected to a procedure to which they did not agree.

The plaintiffs next argue that Frome's failure to actually demand arbitration precludes staying the claims against him. This Court " 'must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.' " *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir.1997) (quoting 9 U.S.C. § 3). Section 3 of the Federal Arbitration Act " 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.' " *WorldCrisa Corp.,* 129 F.3d at 74 (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original)). Consequently, "where a court is satisfied that a dispute before it is arbitrable, it must stay proceedings and order the parties to proceed to arbitration." *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir. 1993).

In this case, the dispute between the plaintiffs and Frome falls squarely within the scope of claims that would be subject to the arbitration clause. However, the arbitration clause states that "either party may demand and commence arbitration," and thus indicates that a party may demand that claims covered by the clause be arbitrated, but that the party is not required to arbitrate those claims. In addition, the fact that either side may elect to arbitrate relevant disputes related to the Purchase Agreement does not mean that without any arbitration demand, those disputes must be arbitrated and cannot be the subject of litigation. The Purchase Agreement states clearly that either side "may demand" arbitration. It is plain that for the arbitration provision under § 10.8 to take effect, the claims at issue must arise out of or relate to the Purchase Agreement and one side must make an arbitration demand. In this case, Frome has not made an arbitration demand, and therefore, the provisions requiring the arbitration of the claims made by the plaintiffs have not yet been triggered. Consequently, there is no basis to compel the parties to seek arbitration and to stay the proceedings against Frome.

Although the plaintiffs have not crafted their argument as one of waiver, it is

instructive that even where a claim is arbitrable under the FAA and a Court would normally be required to compel arbitration and stay litigation, a party's failure to demand arbitration in a timely manner may constitute waiver of the right to arbitrate any covered dispute and requires the party seeking arbitration to continue to litigate the dispute in court. *See, e.g., Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993); *Kramer v. Hammond,* 943 F.2d 176, 178–79 (2d Cir.1991); *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.,* 49 F.Supp.2d 331, 339–41 (S.D.N.Y.1999). In this case, the plaintiffs' argument that Frome has not demanded arbitration is analogous to an argument of waiver to the extent that it suggests that Frome may not be entitled to a stay of the claims against him where the right to arbitration is not appropriately invoked. Frome has not demanded arbitration as required by the relevant provision of the arbitration clause, and therefore this Court is not required to stay the proceedings or to compel the parties to seek arbitration. It is unnecessary to decide at this time whether, if Frome demands arbitration, he will be entitled to arbitration and a stay of the claims against him.

### CONCLUSION

The remaining arguments of the parties are either moot or without merit. For the reasons explained above, the defendants' motion to dismiss the plaintiffs' claims is granted. However, because this is only the second dismissal of the plaintiffs' claims, the dismissal is without prejudice to any party demanding arbitration. The motion of Frome to stay the proceedings is denied. The plaintiffs may file an Amended Complaint by August 22, 2003.

**SO ORDERED.**