Bernard **MARCUS**, Performance Capital LLC and Webnet Design LLC, Plaintiffs,

v.

Robert **FROME** and Olshan Grundman Frome Rosenzweig & Wolesky, LLP, Defendants.

Andrew Chandler, Plaintiff,

v.

Robert Frome and Olshan Grundman Frome Rosenzweig & Wolosky, Defendants.

Nos. 02 Civ. 6192(JGK), 03 Civ. 461(JGK).

United States District Court, S.D. New York.

Aug. 9, 2004.

Leon Baer Borstein, New York City, for Plaintiffs.

Thomas J. Fleming, Olshan, Grundman, Frome, Rosenzweig & Wolosky, L.L.P., New York City, for Defendants.

## OPINION and ORDER

KOELTL, District Judge.

These two actions allege violations of the federal securities laws and common law based on the allegedly false and misleading statements made by the defendants, Robert Frome ("Frome") and the law firm Olshan Grundman Frome Rosenzweig & Wolosky, LLP ("Olshan"), in a Purchase Agreement executed between Bernard Marcus ("Marcus"), Performance Capital LLC ("Performance"), Webnet Design LLC ("Webnet"), The Greatest Inc. ("Greatest"), Adult Age Inc. ("Adult Age"), and Andrew Chandler ("Chandler") (collectively "the plaintiffs") and The Continuum Group ("Continuum"). Through the Purchase Agreement, the plaintiffs transferred various assets to Continuum in return for money and shares of Continuum stock. The actions also allege fraud and misleading statements in an Opinion Letter issued by Olshan in connection with the closing of the Purchase Agreement.[1]

The Second Amended Complaint in the Marcus action (No. 02 Civ. 6192) and the Amended Complaint in the Chandler action (No. 03 Civ. 461) (together, "Complaints") are, for all purposes relevant to these motions, identical.[2] Both Com-

---

1. Continuum is not named as a defendant in this case. *See Marcus v. Frome*, 275 F.Supp.2d 496, 497 n. 1 (S.D.N.Y.2003).

2. The original Complaint in the Marcus action was filed on August 2, 2002. Following a conference in the case, the Court permitted the plaintiffs to file an amended complaint and denied as moot the defendants' pending motions to dismiss the original Complaint. The plaintiffs filed a First Amended Complaint on February 26, 2003. The Court thereafter granted the defendants' motion to dismiss the First Amended Complaint for fail-

plaints assert five causes of action: (1) violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 against Frome and Olshan (Count 1); violations of § 20 of the Exchange Act against Frome (Count 2); common law fraud against Frome (Count 3); common law fraud against Olshan (Count 4); and negligent misrepresentation against Olshan (Count 5).

The defendants now move pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss both Complaints. The defendants move to dismiss the claims under § 10(b) and Rule 10b–5, the claims for common law fraud, and the claim for negligent misrepresentation on the grounds that the plaintiffs have failed adequately to plead scienter as required by Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). The defendants also move to dismiss the federal securities law claims as time-barred under the Sarbanes–Oxley Act. Frome moves to dismiss the § 20 claim on the grounds that the plaintiffs have failed adequately to plead a primary violation of § 10(b) or Rule 10b–5 by Continuum. Olshan moves to dismiss the negligent misrepresentation claim on the grounds that it is precluded by New York's Martin Act. N.Y. Gen. Bus. Law §§ 352 *et seq.* The defendants also seek sanctions under the PSLRA for the plaintiffs' alleged violations of Federal Rule of Civil Procedure 11(b).

## I

On a motion to dismiss, the allegations in the Complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). In deciding a motion to dismiss, all reasonable infer-

ences are drawn in the plaintiffs' favor. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Therefore, the defendants' motion to dismiss should only be granted if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Grandon*, 147 F.3d at 188; *Goldman*, 754 F.2d at 1065.

■ In deciding the motion, the Court may consider documents that are referenced in the Complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002); *see also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991); *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F.Supp.2d 435, 437 (S.D.N.Y.2001). "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it relies and which is integral to the complaint, the court may nonetheless take the document into consideration in deciding the defendant[s'] motion to dismiss, without converting the proceeding to

ure to plead fraud with particularity, but granted the plaintiffs leave to file an another amended complaint. *See Frome*, 275 F.Supp.2d at 506. The plaintiffs then filed

the Second Amended Complaint on September 8, 2003. The Second Amended Complaint is virtually identical to the Amended Complaint in the Chandler action.

one for summary judgment." *Int'l Audio-text Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir.1995) (internal citation and quotation marks omitted); *see Yucyco, Ltd. v. Republic of Slovenia*, 984 F.Supp. 209, 215 (S.D.N.Y.1997). Accordingly, the following facts—which are alleged in plaintiff Marcus's Second Amended Complaint and which are identical to those in plaintiff Chandler's Amended Complaint—are accepted as true for the purposes of these motions.

Marcus is a citizen of Florida and an officer of Continuum. (Marcus Second Amended Complaint ("SAC") ¶ 9.) Chandler is a citizen of Florida. (Chandler Amended Complaint ¶ 1.) Performance is a Delaware limited liability company with offices in Florida. (SAC ¶ 2.) Webnet is a Florida limited liability company with offices in Florida. (SAC ¶ 3.) Olshan is a limited liability partnership practicing law with principal offices in New York, and represented Continuum at all relevant times. (SAC ¶ 5.) Frome is a citizen of New York, a member of Olshan, and the president, director, and sole shareholder of Hanover Capital Corp. (SAC ¶ 4.)

On or about May 5, 2000 after a series of negotiations, Continuum executed a Purchase Agreement with Webnet, Performance, Greatest, Adult Age, Marcus, and Chandler. (SAC ¶ 9.) At the time of the execution of the Purchase Agreement, Frome was President and a director of Continuum. (SAC ¶ 10.) At the time of the execution of the Purchase Agreement, Marcus was the managing member of Performance and Webnet. (SAC ¶¶ 11–12.) At the time the Purchase Agreement was executed, Continuum was a Delaware shell corporation whose shares of common stock were listed on the Over–The–Counter market and were registered with the Securities and Exchange Commission ("SEC"). (SAC ¶ 13.) In accordance with the terms and conditions of the Purchase Agreement, the plaintiffs agreed to transfer certain assets to Continuum in exchange for 16,-230,000 shares of Continuum common stock and $150,000 to be paid to Chandler. (SAC ¶ 14.)

The plaintiffs allege that the representations and warranties in the Purchase Agreement contain a series of misrepresentations. First, the plaintiffs allege that § 4.1 of the Purchase Agreement represented that Continuum had provided the plaintiffs with a true and complete copy of Continuum's Certificate of Incorporation in effect on the date of the execution of the Purchase Agreement, but that this representation was false because an amended Certificate of Incorporation, not provided to the plaintiffs, was dated and filed the day before the Purchase Agreement was executed. (SAC ¶¶ 16–18.) Second, the plaintiffs allege that the Purchase Agreement's representation in § 4.1 that Continuum was a Delaware corporation in good standing was false because Continuum was not a Delaware Corporation in good standing at the time the Agreement was executed, because Continuum had failed to pay certain franchise taxes. (SAC ¶¶ 19–20.) Third, the plaintiffs allege that § 4.3 of the Purchase Agreement was false, because it represented that the Purchase Agreement would not materially conflict with or result in the breach of any other agreement to which Continuum was a party, when in fact the Purchase Agreement conflicted with, among other things, an earlier Private Purchase Memorandum dated March 2000 ("PPM"), and a Joint Plan of Reorganization dated May 12, 1999 ("Joint Plan"), because the number of outstanding shares listed in the documents differed. (SAC ¶¶ 21–25.) Fourth, the plaintiffs allege that § 4.5 of the Purchase Agreement was false because it overstated the number of outstanding shares of Continuum common stock. (SAC ¶¶ 26–27.) Fifth, the plain-

tiffs allege that § 4.6 of the Purchase Agreement was false because it represented that Continuum had no debts, liabilities, or obligations other than those incurred in connection with the Purchase Agreement, when in fact Continuum owed certain taxes and had other liabilities. (SAC ¶¶ 28–32.) Sixth, the plaintiffs allege that § 4.9 of the Purchase Agreement was false because it represented that Continuum was a reporting company pursuant to the Exchange Act, when in fact Continuum was not a reporting company on the date the Purchase Agreement was executed. (SAC ¶¶ 33–35.) Seventh, the plaintiffs allege that § 4.10 of the Purchase Agreement was false because it represented that Continuum had fully complied with the Joint Plan, when in fact Continuum had not fully complied with the Joint Plan. (SAC ¶¶ 36–38.) Finally, the plaintiffs allege, with reference to these seven alleged misrepresentations, that the representations made pursuant to § 6.1 and § 6.4 of the Purchase Agreement that Continuum's representations and warranties were true when made and at the closing were false. (SAC ¶¶ 39–42.)

Frome signed the Purchase Agreement as the president of Continuum, and he also signed the Corporate Secretary's Certificate. (SAC ¶¶ 43–44.) Continuum agreed in § 6.6 of the Purchase Agreement that Olshan would issue a legal opinion ("Opinion") to the plaintiffs which the plaintiffs could rely upon with respect to the closing, and Olshan rendered the Opinion on or about June 26, 2000. (SAC ¶¶ 45–46.) Olshan allegedly stated in the Opinion that Olshan examined specific documents and made such investigation as Olshan deemed necessary to render the Opinion. (SAC ¶ 47.) Olshan is alleged to have stated in the Opinion that: " . . . 2. [Continuum] is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware . . . and 3. The execution, delivery and performance by [Continuum] of the Agreement is within the Company's corporate powers, has been duly authorized by all necessary corporate action and does not contravene: (i) the Charter or Bylaws, (ii) to the best of our knowledge, any law, rule, judgment, writ, order, decree, or regulation applicable to [Continuum] or its properties or (iii) to the best of our knowledge, any contractual or legal restriction of [Continuum]." (SAC ¶ 49.) The plaintiffs allege that this portion of the Opinion was false. (SAC ¶ 49.)

The plaintiffs allege that Continuum, Frome, and Olshan had access to documents that contradicted the representations and warranties made in the Purchase Agreement, the Opinion, and the Certificate. (SAC ¶ 54.) Continuum, Frome, and Olshan are alleged to have had access to the books and records of Continuum prior to, and on the date of, the execution of the Purchase Agreement. (SAC ¶ 55.) Continuum allegedly caused an amended Certificate of Incorporation for Continuum to be prepared and filed the day before the Purchase Agreement was signed. (SAC ¶ 56.) The plaintiffs allege that Frome, as president and director of Continuum and as a member of Olshan, had access to the amended Certificate of Incorporation and authorized its preparation and filing. (SAC ¶ 57.) The plaintiffs also allege, upon information and belief, that Olshan prepared and filed the amended Certificate of Incorporation on behalf of Continuum. (SAC ¶ 58.)

The plaintiffs further allege that Continuum and Frome knew that Continuum was required to pay Delaware corporate franchise taxes, but had not paid its franchise taxes, and was therefore not a Delaware corporation in good standing at the time the Purchase Agreement was signed. (SAC ¶ 59.) Continuum and Frome are also alleged to have participated in Contin-

uum's bankruptcy proceedings, to have been aware of and consented to the terms of the Joint Plan in May 1999, and to have signed the Joint Plan. (SAC ¶¶ 60–61.) Continuum and Frome are alleged to have been aware of the terms of the PPM, and to have had access to both the PPM and the Joint Plan. (SAC ¶¶ 66–67.) Continuum and Frome are alleged to have been aware of Continuum's amended Articles of Incorporation filed on May 4, 2000 stating that the number of outstanding shares of Continuum following a reverse stock split was 7,318,659. (SAC ¶ 69.) Continuum and Frome are alleged to have had access to Continuum's stock ledger and to have known that Continuum had not issued 10% of Continuum's stock to buyers, as provided in the PPM. (SAC ¶ 70.)

The plaintiffs allege that in or about November 1995 Continuum filed a Form 15 with the SEC terminating its status as a reporting company under the Exchange Act. (SAC ¶ 71.) The plaintiffs allege that Olshan prepared the Form 15 and filed it with the SEC. (SAC ¶ 72.) Continuum and Frome are alleged to have had access to Continuum's books and records and to have known that Continuum had filed the Form 15 with the SEC in November 1995 and that Continuum was no longer a reporting company. (SAC ¶¶ 73–74.)

Olshan is alleged to have had access to the employees, books, and records of Continuum before it rendered the Opinion. (SAC ¶ 75.) Olshan's access to, and knowledge of, the books and records of Continuum is alleged to be the same as that of Frome, who was a member of Olshan at the time the Purchase Agreement was executed and the Opinion rendered. (SAC ¶ 76.) Olshan is alleged to have participated in negotiating and drafting the PPM, and to have had a copy of the PPM at the time the Purchase Agreement was execut-

ed and the Opinion rendered. (SAC ¶¶ 77–78.)

The plaintiffs allege that Frome received 1,020,250 shares of Continuum stock, and that his family received 397,500 shares, as a result of the Purchase Agreement. (SAC ¶¶ 80–81.) The plaintiffs allege that members of Olshan also received certain amounts of Continuum stock as a result of the Purchase Agreement. (SAC ¶¶ 85–87.) The plaintiffs also allege that Continuum obtained tangible and valuable assets and income as a result of the Purchase Agreement. (SAC ¶ 89.)

## II

The defendants move pursuant to Rule 12(b)(6) to dismiss the plaintiffs' § 10(b) and Rule 10b–5 claims on the grounds that the plaintiffs have not adequately pleaded scienter under Rule 9(b) and the PSLRA.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides in relevant part:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange-
>
> . . . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Similarly, Rule 10b–5, promulgated under § 10(b) and codified at 17 C.F.R. § 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

■ In order to state a claim brought pursuant to § 10b and Rule 10b–5, a plaintiff must sufficiently allege that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that the plaintiff's reliance on defendant's action caused [plaintiff] injury." *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir.2000) (alteration in original) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 266 (2d Cir.1996)); *see also Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir.2001) (citing *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir.1996)); *In re Loral Space & Communications Ltd. Secs. Litig.*, No. 01 Civ. 4388, 2004 WL 376442, at *5 (S.D.N.Y. Feb. 27, 2004).

■ In the context of securities fraud statutes, scienter "means intent to deceive, manipulate, or defraud, or at least knowing misconduct." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir.1996) (citations omitted); *see also S.E.C. v. Todt*, No. 98 Civ. 3980, 2000 WL 223836, at *9 (S.D.N.Y. Feb. 25, 2000) *aff'd*, 7 Fed.Appx. 98, 2001 WL 345151 (2d Cir.2001). Scienter may be inferred from proof of "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" or from proof that a defendant had "both motive and opportunity to commit fraud." *Rothman*, 220 F.3d at 90; *see also Kalnit*, 264 F.3d at 138; *Chill*, 101 F.3d at 267. An "egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of ... recklessness." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir.2000) (quotations omitted).

■ Moreover, allegations of securities fraud under § 10(b) and Rule 10b–5 are subject to Federal Rule of Civil Procedure 9(b) and the PSLRA's requirements regarding scienter. *See* 15 U.S.C. § 78u–4(b)(2); *Chill*, 101 F.3d 263, 266 (2d Cir. 1996); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127–28 (2d Cir.1994). Under the PSLRA, "plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," namely the intent to "deceive, manipulate, defraud, or knowing misconduct." *Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 537–38 (2d Cir.1999). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128, *quoted by Press*, 166 F.3d at 538; *see also In re Loral Space*, 2004 WL 376442, at *5.

■ The defendants argue that the plaintiffs have not pleaded scienter adequately because the plaintiffs have not es-

tablished either motive and opportunity to commit fraud or facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. In their papers in opposition to the defendants' motions, the plaintiffs attempt to defend only two of the alleged misrepresentations: (1) that the Purchase Agreement complied with the terms of the Joint Plan, and (2) that Continuum was a reporting company under the Exchange Act. With respect to these alleged misrepresentations, the plaintiffs have adequately pleaded scienter under both methods of establishing the requisite strong inference of fraud.

First, the plaintiffs have adequately alleged the defendants' motive and opportunity to commit fraud. The Court of Appeals has noted that opportunity "entail[s] the means and likely prospect of achieving concrete benefits by the means alleged." *Novak*, 216 F.3d at 307 (internal citation omitted). There is no dispute that the defendants had an opportunity to commit fraud through the various representations and warranties they made in the Purchase Agreement, the Opinion, and the Certificate—all of which were allegedly designed to induce the plaintiffs to execute the Purchase Agreement. The issue, then, is whether the plaintiffs have adequately alleged that the defendants had a motive to commit fraud. The Court of Appeals has explained that allegations of motive are sufficient if they "entail concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged." *Kalnit*, 264 F.3d at 139 (internal quotation marks omitted). The plaintiffs "must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Id.* Motives generally possessed by most corporate directors and officers do not suffice. *Id.* Therefore, the Court of Appeals has concluded that motive is not adequately pleaded where the plaintiffs allege that the de-

fendants have a desire for the corporation to appear profitable or a desire to keep stock prices high in order to increase officer compensation. *Id.; see also Novak*, 216 F.3d at 307–08 (collecting cases). By contrast, the Court of Appeals has held that motive is adequately pleaded where the plaintiffs allege that the defendants sold their own shares while at the same time misrepresenting corporate performance in order to inflate stock prices. *See Kalnit*, 264 F.3d at 139; *Novak*, 216 F.3d at 307–08 (collecting cases); *see also In re Loral Space*, 2004 WL 376442, at *6.

The plaintiffs have adequately alleged that Continuum, Olshan, and Frome had the motive to commit fraud, because each is alleged to have realized concrete and personal benefits as a result of the alleged fraud. The plaintiffs allege that Continuum obtained tangible and valuable assets and income as a result of the Purchase Agreement. (SAC ¶ 89.) Frome is alleged to have received 1,020,250 shares of Continuum stock as a result of the Purchase Agreement, and his family is alleged to have received 397,500 shares. (SAC ¶¶ 80–81.) The plaintiffs also allege that Olshan had motive to make misrepresentations because members of Olshan received shares of Continuum stock following the execution of the Purchase Agreement. (SAC ¶¶ 85–87.) The plaintiffs have alleged that the defendants, as well as Continuum, stood to receive, and received, these personal concrete benefits as a result of the alleged misrepresentations in the Purchase Agreement. The plaintiffs have thus adequately alleged a motive and opportunity to commit fraud and raised a strong inference of fraudulent intent.

■ Moreover, as an alternative grounds for establishing the defendants' scienter for the two misrepresentations at issue, the plaintiffs have adequately al-

leged facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness by the defendants. The Court of Appeals has explained that "securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements." *Novak*, 216 F.3d at 308; *see also Kalnit*, 264 F.3d at 142. "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak*, 216 F.3d at 309. With respect to the two misrepresentations at issue, the plaintiffs have adequately alleged that the plaintiffs knew facts or had access to information contradicting the alleged misrepresentations. The plaintiffs allege that Continuum, Frome, and Olshan had access to Continuum's books and records, including the Joint Plan, which allegedly would have contradicted any representation that the Purchase Agreement complied with the terms of the Joint Plan. The plaintiffs further allege that Continuum, Frome, and Olshan had access to a Form 15 filed by Continuum with the SEC in November 1995, which allegedly would have contradicted any representation that Continuum was a reporting company at the time the Purchase Agreement was executed. For these reasons, the plaintiffs adequately "allege facts and circumstances that would support an inference that defendants knew of specific facts that are contrary to their public statements." *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir.2004). The facts alleged are sufficiently strong circumstantial evidence of the defendants' conscious misbehavior or reck-

lessness that they raise a strong inference of fraudulent intent.

The plaintiffs have sufficiently alleged violations of § 10(b) and Rule 10b-5 by defendants Frome and Olshan, as well as by Continuum, and the defendants' motions to dismiss Count 1 in both Complaints are therefore denied.[3]

### III

 Frome also moves to dismiss Count 2 of the Complaints brought under § 20(a) of the Exchange Act. Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t. To make out a prima facie case under Section 20(a) a plaintiff "must show a primary violation [of the Exchange Act] by the controlled person and control of the primary violator by the targeted defendant, and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *First Jersey Sec. Inc.*, 101 F.3d at 1472 (quotations and internal alterations omitted). Although Continuum, the alleged controlled person, is not a named defendant in this action, the plaintiffs have adequately pleaded a violation of § 10(b) and Rule 10b-5 by Continuum. The plaintiffs have also adequately alleged that Frome, as president and a director of Continuum, controlled Contin-

---

**3.** The defendants also move to dismiss Count 1 on the grounds that it purports to state a claim for aiding and abetting a violation of § 10(b). The argument is without merit, be-

cause both Frome and Olshan are alleged to have committed primary violations of § 10(b), not to have aided and abetted such a violation.

uum. For the reasons explained above with respect to the § 10(b) and the Rule 10b–5 claims against defendant Frome, the plaintiffs have sufficiently alleged that Frome was a culpable participant in the alleged fraud. The defendants' motions to dismiss the § 20(a) claims against defendant Frome are therefore denied.

## IV

■ The defendants also contend that Counts 1 and 2 should be dismissed on the grounds that they are time-barred. Under the Sarbanes–Oxley Act, the claims brought under § 10(b) and § 20(a) of the Exchange Act may be brought no later than the earlier of: (1) two years after the discovery of the facts constituting the alleged fraud, or (2) five years after such fraud. 28 U.S.C. § 1658(b). The defendants contend that the plaintiffs were on inquiry notice of the facts constituting the alleged fraud at the time of the Purchase Agreement, which was more than two years before the Complaints were filed. However, determining when the plaintiffs knew or should have known of the facts constituting the alleged fraud in this case raises issues of fact that cannot be resolved on a motion to dismiss. *See, e.g., Nelson v. Stahl,* 173 F.Supp.2d 153, 166 (S.D.N.Y.2001) ("[T]he question of whether Plaintiffs should have discovered the fraud earlier than they did, and thus whether the action is timely, is a question for the trier of fact.").

The defendants' motions to dismiss Counts 1 and 2 of the Complaints as time-barred are therefore denied.

## V

■ Olshan and Frome moved to dismiss Counts 3 and 4 of the Complaints, which assert claims of common law fraud against Frome and Olshan. The defendants contend that these claims fail to allege scienter sufficiently. A claim for common law fraud under New York law must satisfy the requirements of Rule 9(b). *AIG Global Secs. Lending Corp. v. Banc of Am. Secs. LLC,* 254 F.Supp.2d 373, 389 (S.D.N.Y.2003); *Lewis v. Rosenfeld,* 138 F.Supp.2d 466, 477–78 (S.D.N.Y.2001). However, for the reasons explained above with respect to the claims under § 10(b) and Rule 10b–5, the allegations in the Complaints satisfy the particularity requirements of Rule 9(b) for alleging scienter.

■ Olshan also moves to dismiss Count 4 on the grounds that there are no material misrepresentations in the Opinion. However, the Opinion states that Olshan concluded, to the best of its knowledge, that the Purchase Agreement did not contravene "any law, rule, judgment, writ, order decree or regulation applicable to [Continuum] or ... any contractual or legal restriction of [Continuum]." (SAC ¶ 48.) If Olshan knew that the Purchase Agreement contravened the Joint Plan or that the representation in the Purchase Agreement that Continuum was a reporting company was false, then the Opinion contained a material misrepresentation, because the Purchase Agreement would have violated contractual or legal restrictions on Continuum such as the Joint Plan and the federal securities laws, among others.

The defendants' motions to dismiss the common law fraud claims in Counts 3 and 4 are therefore denied.

## VI

■ Olshan also moves to dismiss the Count 5 negligent misrepresentation claim in both Complaints on the grounds that it is precluded by New York's Martin Act, N.Y. Gen. Bus. Law §§ 352 *et seq.* "The Martin Act provides that the attorney general shall regulate and enforce New York's securities laws. Accordingly, it is well established that there exists no

476

private right of action for claims that are within the purview of the Act. Thus courts have dismissed state law claims covered by the Martin Act on the grounds that permitting them to proceed would be equivalent to permitting a private claim under the Act." *Spirit Partners, L.P. v. audiohighway.com*, No. 99 Civ. 9020, 2000 WL 685022 (S.D.N.Y. May 25, 2000) (internal quotation marks, citations, and footnote omitted) (dismissing a negligent misrepresentation claim as precluded by the Martin Act). Courts have routinely found common law negligent misrepresentation claims precluded by the Martin Act. *See Nanopierce Technologies, Inc. v. Southridge Capital Mgmt., LLC*, No. 02 Civ. 0767, 2003 WL 22052894, at *2–*3 (S.D.N.Y. Sept. 2, 2003) (explaining why negligent misrepresentation claims are precluded by the Martin Act and collecting cases); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, No. 02 Civ. 1230, 2002 WL 31027550, at *10 (S.D.N.Y. Sept. 10, 2002) (dismissing a negligent misrepresentation claim as precluded by the Martin Act and collecting cases).[4] The defendants' motion to dismiss Count 5 in both Complaints is therefore granted.

## VII

■ The defendants also move for sanctions pursuant to § 21D of the PSLRA.[5] Subsection c of § 21D provides:

In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

15 U.S.C. § 78u–4(c)(1). The motion is premature, because there has been no "final adjudication" in this case. *See Louros v. Kreicas*, No. 03 Civ. 1514, 2003 WL 22353979, at *2 (S.D.N.Y. Oct. 15, 2003); *Blaser v. Bessemer Trust Co., N.A.*, No. 01 Civ. 11599, 2002 WL 31359015, at *3–4 (S.D.N.Y. Oct. 21, 2002). Therefore, the defendants' motion for sanctions pursuant to the PSLRA is denied without prejudice to renewal upon final adjudication of the action.

## CONCLUSION

For the reasons explained above, the defendants' motions to dismiss are granted with respect to Count 5 in both Complaints and are denied with respect to Counts 1–4 in both Complaints. The defendants' motions for sanctions pursuant to the PSLRA are denied without prejudice to renewal upon final adjudication of the action.

**SO ORDERED.**

---

4. The plaintiffs rely on *Cromer Finance Ltd. v. Berger*, No. 00 Civ 2498, 2001 WL 1112548 (S.D.N.Y. Sept. 19, 2001), and *Scalp & Blade, Inc. v. Advest, Inc.*, 281 A.D.2d 882, 722 N.Y.S.2d 639, 640 (2001), in which the courts determined that negligent misrepresentation claims are not precluded by the Martin Act. However, as Judge Sand observed in *Nanopierce*, "[b]oth *Scalp & Blade* and *Cromer Finance* stand as solitary islands in a stream of contrary opinion." *Nanopierce*, 2003 WL 22052894, at *4. For the reasons thoroughly set forth by Judge Sand in *Nanopierce*, neither *Scalp & Blade* nor *Cromer Finance* provides a persuasive basis for concluding that negligent misrepresentation claims are not precluded by the Martin Act. *See id.* at *3–4.

5. The Notice of Motion states that this motion is made solely under § 21D of the PSLRA, and not under Rule 11 itself. Rule 11 prescribes special procedures for serving and filing a motion for sanctions, and it is not clear that those procedures were followed with respect to this motion. *See* Fed.R.Civ.P. 11(c)(1)(A).