**INTELLIGENT DIGITAL SYSTEMS, LLC, Russ & Russ PC Defined Benefit Pension Plan and Jay Edmond Russ, Plaintiffs,**

v.

**VISUAL MANAGEMENT SYSTEMS, INC., Jason Gonzalez, Howard Herman, Robert Moe, Michael Ryan, Col. Jack Jacobs, Ret., and Marty McFeely, Defendants.**

**No. CV 09–974.**

United States District Court,
E.D. New York.

Jan. 28, 2010.

Ira Levine, Esq., Great Neck, NY, Reed Smith LLP, by Paul E. Breene, Esq., New York, NY, Attorneys for Plaintiffs.

Certilman Balin Adler & Hyman, LLP, by Martin P. Unger, Esq., Paul B. Sweeney, Esq., East Meadow, NY, Attorneys for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge:

This is a case that arises out of the parties' business relationship which, in general terms, involved the sale of Plaintiffs' proprietary technology, and related business to Visual Management Systems, Inc, the Defendant company ("VMS"). The parties' transaction involved a sale of assets, a consulting agreement, and an unsecured convertible promissory note (the "Note"). The Note, carrying a principle amount of $1.544 million, allows for any amount owed (included any interest accrued) to be converted for payment, under certain circumstances, from cash to payment in the form VMS stock.

After VMS defaulted on its obligations pursuant to the parties' business transaction, this action was commenced. In addition to alleging various state law claims sounding in negligence, breach of contract, and fraud, the complaint sets forth Federal Securities Law Fraud claims pursuant to Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, promulgated pursuant thereto, 17 C.F.R. § 240.10b–5. (collectively referred to herein as (the "Securities Claim")).[1]

Presently before the court is Defendants' motion to dismiss the Securities Claim on the grounds that: (1) the Note is not a security subject to regulation under Federal law; (2) the complaint fails to allege the necessary scienter, and (3) the complaint fails to plead that the alleged fraud was committed "in connection with" the sale of a security. Defendants further move to dismiss on the ground that Plain-

tiffs have failed to allege fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Finally, Defendants argue that if the lone Federal claim is dismissed, this court should refuse to exercise supplemental jurisdiction over the state law claims. Also before the court is Plaintiffs' motion seeking an order of attachment as to the assets of all Defendants.

## BACKGROUND

I. *The Parties and Their Business Relationship*

Plaintiffs in this case are Intelligent Digital Systems, LLC ("IDS"), Russ & Russ Defined Benefit Pension Plan, and individual Plaintiff Jay Edmond Russ. Defendant VMS is a publicly traded company. The individually named Defendants are VMS Chief Executive Officer Jason Gonzalez and VMS Board members Robert Moe, Martin McFeely, Michael Ryan and Col. Jack Jacobs (ret.) (collectively, the "Individual Defendants").[2]

IDS was the owner of certain digital video recorder ("DVR") proprietary technology that was sold, along with other assets, to VMS pursuant to an asset purchase agreement entered into on April 2, 2008. In connection with the purchase, VMS executed the Note. Because the Note is the alleged "security" forming the basis of the Securities Claim, the court describes the Note in further detail. As noted, the principle amount of the Note is $1.544 million. The terms of the note provide, *inter alia*, for VMS to pay the principal amount on April 2, 2011 (the "Maturity

---

1. Plaintiffs assert two separate securities fraud claims, one against all Defendants, and one against Defendant Gonzalez. The latter claim is asserted pursuant to Section 20(a), seeking to hold Gonzalez liable as a "controlling" person. As both claims require proof of the same essential elements discussed herein, the court refers to these claims as a single ("Securities Claim").

2. The complaint also originally named VMS former Chief Financial Officer Howard Herman. The case against this Defendant has been voluntarily dismissed.

Date"). The Note accrues no interest if the principle amount is paid on the Maturity Date. Thereafter, the Note provides for interest at an annual rate of 12%.

Payment under the Note is convertible, at the discretion of IDS, and under circumstances enumerated in the Note, to the common stock of VMS. The Note sets the conversion price of a share of VMS at $1.15, subject to certain adjustments set forth in the Note. When, and if, IDS decides to exercise its right to convert, the Note provides that IDS would be issued an amount of shares of the common stock of VMS equal to the amount of principle owed (plus any accrued interest), divided by the conversion price (the "Conversion Number"). Upon such conversion, IDS would be issued the number of shares equal to the Conversion Number. The Note gives IDS the option to assign its rights under the Note to a third party. Such assignment may only be an assignment of the Note in whole, and all rights and obligations under the Note would pass to the assignee. Although the Note provides for conversion to the common stock of VMS, it states, on its face, that neither the Note, nor the common stock issuable upon exercise of the right to convert, have been "registered under the Securities Act of 1933 as amended." The Note further provides that "the common stock issuable upon conversion of this note may not be sold, offered for sale pledged or hypothecated in the absence of an effective registration statement ... under the Securities Act of 1933 ...."

## II. *The Motions*

As noted, Defendants move to dismiss the Securities Claim on the ground that the Note is not a security within the meaning of the federal securities laws. Even assuming that the Note is a security, the complaint is alleged to be subject to dismissal for failure to properly allege: (1) scienter, and/or (2) that the fraud alleged

was committed in connection with the sale of a security. Defendants also seek dismissal of the Securities Claim, and the claim of common law fraud, on Rule 9(b) pleading grounds. If the lone Federal claim is dismissed, Defendants seek dismissal of the entire action on the ground that this court should refuse to exercise supplemental jurisdiction over the state law claims.

Plaintiffs oppose the motion to dismiss on the grounds that the Note is a security, and that all other elements of the Securities Claim are properly pleaded. In the event that the federal claim is dismissed, Plaintiffs seek leave to amend their complaint to allege diversity jurisdiction.

In addition to opposing the motion to dismiss, Plaintiffs seek an order of attachment. Specifically, Plaintiffs seek attachment, pursuant to Article 62 of the CPLR, of the assets of all Defendants. Plaintiffs claim fulfillment of all statutory requirements for an attachment, and that attachment is necessary to secure the payment of any judgment.

## DISCUSSION

### I. *Motion to Dismiss the Securities Claim*

#### A. *Standard for Motion to Dismiss*

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. 99. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible

on its face." *Twombly*, 127 S.Ct. at 1974, *see also Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).

While heightened factual pleading is not the new order of the day, *Twombly* holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Williams v. Berkshire Fin. Grp. Inc.*, 491 F.Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, *Twombly*, 127 S.Ct. at 1959. In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. *Watts v. Services for the Underserved*, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. A pleading that does nothing more that recite facts and bare legal conclusions is insufficient to "unlock the doors of discovery ... and only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1950. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the action. *See Brass v. Amer. Film Techn., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Watts*, 2007 WL 1651852 *2.

### B. *Pleading Securities Fraud*

■ To state a claim pursuant to the Securities Claim Plaintiffs must show that: (1) in connection with the purchase or sale of securities; (2) defendant, acting with scienter; (3) made an untrue statement of fact, or omitted to state a material fact in order to make the statement made, in light of the circumstances under which they were made, not misleading, and, (4) that reliance on defendant's action caused plaintiff's damage. *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir.2000); *Marcus v. Frome*, 329 F.Supp.2d 464, 472 (S.D.N.Y. 2004).

## II. *Characterizing the Note*

### A. *Standards for Determining Whether A Note Is A Security*

The statutory definition of the term "security," includes the term "note." *See* 15 U.S.C. § 78c(a)(10). It has been recognized, however, that not all instruments bearing the title, "note," are securities that are regulated under the securities laws. *See Reves v. Ernst & Young*, 494 U.S. 56, 62–63, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990). In *Reves*, the Supreme Court held that while all "notes" are presumed to be securities, that presumption is subject to rebuttal. Adopting the "family resemblance" test first articulated by the Second Circuit Court of Appeals, the Supreme Court held that a note will be deemed a security unless it is, or bears a "family resemblance" to, one of the judicially enumerated instruments that are recognized not to be securities. *Reves*, 494 U.S. at 65, 110 S.Ct. 945. Those exceptions are:

- the note delivered in consumer financing,
- the note secured by a mortgage on a home,
- the short-term note secured by a lien on a small business or some of its assets,
- the note evidencing a character loan to a bank customer,
- short-term notes secured by an assignment of accounts receivable,

- a note which simply formalizes an open-account debt incurred in the ordinary course of business, and
- notes evidencing loans by commercial banks for current operations.

*Id.* To determine whether the note at issue resembles one of the exceptions above, the court considers four factors. Specially, the court considers: (1) the motivations that would prompt a reasonable buyer and seller to enter into the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectation of the investing public, and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument, thereby rendering application of the securities laws unnecessary. *Reves,* 494 U.S. at 66–67, 110 S.Ct. 945; *see, e.g., Roer v. Oxbridge Inc.,* 198 F.Supp.2d 212, 224 (E.D.N.Y.2001).

When considering these factors, the court bears in mind that the securities laws were enacted to regulate "investments." *Reves,* 494 U.S. at 61–62, 110 S.Ct. 945. The purchase of certain instruments, such as stocks, are "as a practical matter," always investments, so long as they have the "economic characteristics traditionally associated with a stock," *Id.* On the other hand, the term "note" is a "relatively broad term that encompasses instruments with widely varying characteristics, depending on whether issued in a consumer context, as commercial paper, or in some other investment context." *Reves,* 494 U.S. at 62, 110 S.Ct. 945 (citation omitted).

## B. *The Note is Not A Security*

### 1. *Motivation of the Parties*

As to the first factor, the motivation of the parties, the court notes that where the motivation of the transaction is to raise money for the "general use of a business enterprise or to finance substantial investments," the motivation is likely to be deemed an investment, and consequently, the note is more likely to be characterized as a security. *Reves,* 494 U.S. at 66, 110 S.Ct. 945. If, on the other hand, the note is issued in connection with some commercial (as opposed to investment) purpose, the note is less likely to be characterized as a security. *Id.; Roer,* 198 F.Supp.2d at 224. Put succinctly, investment motivation indicates a security, while commercial or consumer motivation indicates a non-security. *Pollack v. Laidlaw Holdings, Inc.,* 27 F.3d 808, 812 (2d Cir. 1994).

The transaction here is best described as the sale of technology from one business to another for a lump sum. The motivation of the seller is not to invest in the future success of the buyer, where the price to be paid might vary along with the success, or lack thereof, of the buyer's business. Instead, the amount to be paid is contractually established, and must be paid, whether or not the buyer's business is positively affected by the purchase. The risk attendant to the sale lies with the buyer, and not with the seller, who (in the absence of default) is guaranteed a set amount in payment. While payment might not, as here, be made in the event of a default, that default is not something that is unique to any "investment-like" character of the asset purchase, but is a risk attendant to any sale. The seller has not invested in the buyer's business, but has merely sold assets to the buyer.

The fact that the Note is convertible to shares of stock does not require a different conclusion. Relying heavily on language in the case of *Leemon v. Burns,* 175 F.Supp.2d 551 (S.D.N.Y.2001), Plaintiffs argue that the convertible nature of the Note, is a "strong factor" in favor of finding that the Note is a security. *Leemon,* 175 F.Supp.2d at 559. While this factor may have weighed heavily in *Leemon,* it is

not dispositive here. First, the fact that a note is convertible to stock, is not a factor identified by the Supreme Court when it adopted the family resemblance test. More importantly, *Leemon* is distinguishable because in that case it was clear that plaintiff had made a general investment in the defendant company. In return for that "investment," *Leemon*, 175 F.Supp.2d at 559, plaintiff was to receive a promissory note, stock, stock incentives, and a certain amount of control over the defendant company. It was clear that the note in *Leemon* represented an investment in the defendant company. Here, in contrast, the transaction is best characterized as a commercial sale of assets, and not as an investment. The commercial motivation of the parties weighs against a finding that the Note is a security. This motivation is unchanged by isolated language in *Leemon* focusing on the convertible nature of the note in that case.

### 2. *Plan of Distribution*

■ Consideration of the "plan of distribution" factor requires the court to consider whether the Note is "an instrument in which there is 'common trading for speculation or investment.'" *Reves*, 494 U.S. at 66, 110 S.Ct. 945. If the instrument is "offered and sold to a broad segment of the public," it is likely to be deemed a security. *Roer*, 198 F.Supp.2d at 224. This factor takes into account the fact that Congress intended the securities laws to protect unsophisticated investors. *Pollack*, 27 F.3d at 813.

This factor weighs against a finding that the Note is a security. The Note merely evidences an obligation to pay an agreed upon amount, either in cash or in stock. While it is assignable, it is not registered to be traded, or to be the subject of speculation. In view of the fact that the Note evidences a single transaction, it is not one of many security-like instruments that are offered to "a broad segment of the public."

*See Reves*, 494 U.S. at 68, 110 S.Ct. 945. Accordingly, the plan of distribution does not indicate that the Note is a security. *Accord Equitable Life Assurance Society of the United States v. Arthur Andersen & Co.*, 655 F.Supp. 1225, 1243 (S.D.N.Y.1987) (note evidencing a "isolated transaction" and not designed for public trading, held not to be a security).

### 3. *Reasonable Expectations of the Investing Public*

■ As to the "reasonable expectations of the investing public," the court notes that in this case there is no "investing public," but only a single seller who expected only to be paid in full for an asset sale. While the seller can reasonably expect to be paid, either in cash or in stock, there is no reason for the seller to consider the Note evidencing that payment to be characterized as an investment in the buyer's business. Accordingly, this factor weighs against a finding that the Note is a security. *Accord Benedict v. Amaducci*, 1995 WL 413206 *10 (S.D.N.Y.1995) (fact that there was no "public expectation that the notes would be traded as securities" militates against finding that notes were securities).

### 4. *Existence of Alternate Regulatory Scheme*

Because the result of the court's analysis of the first three factors weighs so heavily against a finding that the Note is a security, the court need not consider the fourth factor, *i.e.*, whether the existence of another regulatory scheme, significantly reduces the risk of the instrument and renders application of the securities laws unnecessary. The court notes only that even if there is not some regulatory scheme outside of the securities laws that applies here, that does not alter the fact that this one time business transaction between sophisticated parties is not the type of broad

investment scenario that the securities laws were meant to regulate.

For the foregoing reasons the court holds that the Note is not a security within the meaning of the federal securities laws. The Securities Claim is therefore dismissed, and it is unnecessary for the court to consider the alternative grounds urged in support of dismissal of this claim. *See Leemon v. Burns,* 175 F.Supp.2d 551, 557–58 (failure to establish any one element of securities fraud cause of action is fatal to claim). In view of the fact that Plaintiffs have alleged common law fraud in addition to their Securities Claim, the court considers whether the fraud claim complies with the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure.

### III. *Rule 9*

#### A. *Pleading Standards*

Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9") requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). States of mind such as malice, intent or knowledge may be generally averred. *Id.* Complaints alleging fraud are required to: (1) state the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *McGrath v. Dominican College of Blauvelt, New York,* 2009 WL 4249122 *5 (S.D.N.Y.2009) (citations omitted).

The purpose of Rule 9 is to "ensure that a defendant is informed sufficiently of the allegations against him such that he is in a position to answer the complaint and prepare a defense." *Id.* (citation omitted). Thus, although the pleading standard imposed by Rule 9 is high, the Second Circuit has held that the rule does not require the pleading of "detailed evidentiary matter."

*In re Scholastic,* 252 F.3d 63, 72 (2d Cir. 2001). The ultimate issue when determining whether a pleading satisfies Rule 9 is whether or not the pleading puts defendant on sufficient notice of the claim and the actual ground upon which it is based. *Id.*

#### B. *The Claim of Fraud Complies With Rule 9*

■ The facts alleged in support of the claim of common law fraud are the same as those alleged in support of the now-dismissed Securities Claim. Plaintiffs support the claim of fraud by alleging that Defendants knowingly misrepresented the financial condition of VMS, and that this financial condition was knowingly and wrongfully misstated in the company's public financial disclosures. Specifically, Plaintiffs allege that Defendants became aware of the financial wrongdoing of VMS's former Chief Financial Officer after entering into a letter of intent with Plaintiffs, but before closing of the parties' transaction. It is further alleged that VMS knew that correction of financial misstatements would likely render the company insolvent, and therefore unable to comply with its obligations pursuant to the planned transaction. Defendants are alleged to have nonetheless decided to go forward with the transaction. It is alleged that the failure to disclose its true financial condition, and inability to pay, prior to closing the transaction with Plaintiffs constitutes fraudulent conduct.

While the court cannot say whether Plaintiffs' factual allegations are true, it holds that these allegations are sufficient to comply with Rule 9. Plaintiffs have set forth facts with sufficient specificity to put Defendants on notice of the precise nature of their claim. Under these circumstances, Rule 9 does not provide a basis for dismissal.

## IV. Supplemental or Diversity Jurisdiction

In view of the dismissal of the Securities Claim—the only claim alleged in the claim to support the exercise of Federal jurisdiction—the court addresses Plaintiffs' allegation that federal jurisdiction also exists pursuant to 28 U.S.C. § 1332 (diversity of citizenship). In light of the fact that it appears to the court that diversity jurisdiction may be properly alleged, the parties are directed to confer and determine whether Defendants will stipulate to the filing of an amended complaint, solely for the purpose of alleging such jurisdiction. Counsel for Plaintiff is directed to inform the court as to whether agreement on this issue is reached within two weeks of the date of this order. In the event that such agreement is not reached, the court will schedule a conference to consider whether motion practice on this issue is necessary. Having ruled on Defendants' motion to dismiss, the court turns to consider Plaintiffs' motion for an attachment.

## V. Motion for Attachment

### A. Legal Principles

■■ Rule 64 of the Federal Rules of Civil Procedure provides that the remedy of attachment is governed by state law. See Fed.R.Civ.P. 64. Section 62 of the New York Civil Practice Law and Rules ("CPLR") therefore governs Plaintiff's motion to attach Defendants' assets. The relief of attachment is available, *inter alia,* where the party whose assets are sought to be attached is a non-domiciliary residing outside of the State of New York, or a foreign corporation that is not authorized to do business within New York. *See* C.P.L.R. § 6201(1). As the moving parties, Plaintiffs bear the burden of proving the right to an attachment, and that burden is high. Specifically, a party seeing an order of attachment must show a probability of success akin to that required to

obtain injunctive relief. *See Perrotta v. Giannoccaro,* 141 Misc.2d 155, 532 N.Y.S.2d 998, 1000 (1988). Additionally, the moving party must show: (1) the existence of a cause of action; (2) that one or more of the Section 62 grounds for attachment exist, and (3) that the amount sought to be attached exceeds any amount sought by way of counterclaim. C.P.L.R. § 6212(a). Additionally, the court considers whether attachment is needed to secure payment or obtain jurisdiction. *See Capital Ventures Intern. v. Republic of Argentina,* 443 F.3d 214, 222 (2d Cir.2006).

■ Attachment is recognized as an extraordinary remedy. Accordingly, mere satisfaction of the statutory criteria does not guarantee that the motion will be granted. Instead, "relief is discretionary and since attachment is a harsh remedy, the court must exercise care in its application." *Musket Corp. v. PDVSA Petroleo S.A.,* 512 F.Supp.2d 155, 160 (S.D.N.Y. 2007) (citation omitted). With these standards in mind the court turns to consider Plaintiffs' request.

### B. Disposition of the Attachment Motion

Plaintiff seeks to attach the assets of all Defendants—those of the corporate entity as well as those of all Individual Defendants. Certain grounds for attachment are easily met. Plaintiffs have shown that the Individual Defendants are non-domiciliaries who do not reside within the State of New York, and that VMS is a foreign corporation that is not qualified to do business in New York *See* C.P.L.R. § 6201(1). Additionally, Plaintiffs have demonstrated both a cause of action and an absence of any counterclaim. The court considers below whether the remaining elements of attachment are established with respect to either the Individual Defendants or VMS.

### 1. The Individual Defendants

█ The core of Plaintiffs' case alleges improper filings with the SEC. While Plaintiffs may ultimately prove the involvement of each Individual Defendant, the court cannot hold, at this stage of the proceedings, that Plaintiffs have established the required probability of success on their claims of individual liability as to falsification of publicly filed documents. It is also unclear as to whether the Individual Defendants might be personally liable for payment on the contract at issue. Moreover, Plaintiffs' complaint focuses on the allegedly culpable acts of the corporate Defendant's former Chief Financial Officer, Howard Herman, and not any other individual Defendant. Herman, who has since been dismissed from this action, now submits an affidavit in support of the claim that the assets of the remaining Individual Defendants should be attached. The disparate nature of the facts in the complaint, when compared to those alleged in support of the order of attachment, renders those offered in support of the attachment less credible. For the foregoing reasons, the court does not find the probability of success as to the Individual Defendants that is required to attach the assets of these Defendants. Accordingly, the court denies the motion to attach the assets of the Individual Defendants.

### 2. The Corporate Defendant

█ As to VMS, the Corporate Defendant, the court reaches a different conclusion. With respect to this Defendant, the element of probability of success has been established. VMS is named as the sole Defendant in the complaint's fifth, sixth, seventh and eighth causes of action. These claims sounds in breach of contract, and allege that VMS breached its obligations to make payments with respect to: (1) the Note; (2) the consulting agreement with Plaintiff Russ; (3) the promissory note to be paid to Plaintiff pension plan, and (4) the asset purchase agreement. With respect to each of these claims, Plaintiffs have established a high probability of success. Indeed, the publicly filed statements of VMS acknowledge the existence of these agreements, as well as the failure of VMS to make scheduled payments. There appears to be no defense to these contractual claims against VMS, and the court therefore holds that there is strong likelihood of success as to each. Additionally, the precarious financial position of VMS weighs in favor of a finding that attachment is needed to secure payment. In view of the fact that the court has already found that Plaintiffs have established the remaining elements required for attachment, the court holds that it is appropriate to grant the request for an attachment with respect to the attachable assets of VMS.

The court notes, however, that Plaintiffs have not complied with the statutory requirement of an undertaking. No attachment will issue, therefore, at this time. Plaintiffs are directed to submit to this court, on notice to VMS, a proposed undertaking indicating the amount of the undertaking that is argued to be appropriate. Plaintiffs shall also submit, for the court's review, and on notice to VMS, any other documents necessary to effectuate an attachment as to the assets of VMS. Upon review and consideration of the Plaintiffs' proposal, the court will issue, if appropriate, the documents necessary to effectuate the attachment as to VMS.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' securities fraud claims is granted. The motion to dismiss the claim of fraud pursuant to Rule 9 is denied. Plaintiffs' motion for an attachment is denied with respect to the Individual Defendants, and granted with

respect to the corporate Defendant, VMS. Plaintiff is directed to submit proposed attachment documents, on notice to VMS, to the court as directed above. The parties are directed to confer and report back to this court with respect to the filing of an amended complaint to allege diversity jurisdiction, as set forth above. The Clerk of the Court is directed to terminate the motion to dismiss as well as the motion for an attachment.

SO ORDERED.